| 18 | 501 |
|----|-----|
| 29 | 149 |
| 18 | 501 |
| 38 | 405 |
| 18 | 501 |
| 44 | 304 |
| 18 | 501 |
| 50 | 3 |
| 50 | 351 |
| 50 | 403 |
| 18 | 501 |
| e54 | 597 |

WM. LAKE ET ALS., APPELLANTS, VS. THE STATE OF FLOR-
IDA EX REL. J. D. PALMER ET ALS., APPELLEES.

1. Where the pleadings in a proceeding by information in the nature of a *quo warranto* show a good cause of action in favor of the State, it is immaterial whether the person upon whose relation the information is filed establishes his title to the office. There is nothing in Chapter 1874, Laws, which changes this rule.

2. A law which does not in terms assume to revise, alter or amend any prior act or section of an act, but by various transfers of existing duties, the imposition of new duties, and the creation of new officers to perform such duties, has the effect to restrict the operation of antecedent legislation, and thus by implication to modify it, is not unconstitutional.

3. A statute which creates a new class of municipal corporations, leaving nothing to option or discretion as to its operation in creating the new class, and which imposes like duties and bestows like powers upon each municipality of the new class, is a law of uniform operation within the meaning of that term as used in the Constitution of this State. Chapters 1874, 3162 and 3312, Laws of Florida, construed, so far as they affect proceedings upon information in the nature of a *quo warranto*, and the creation of a Board of Health for a new class of municipal organizations.

Appeal from the Circuit Court for Nassau county.

Chaper 1874, Laws of Florida, approved February 2, 1872, is as follows:

SECTION 1. That in all proceedings upon writs of *quo*

*warranto*, information in the nature of such writs or civil actions instituted to obtain the remedies obtainable by such proceedings, where the Attorney-General institutes the action and does not make all the persons claiming the title to the office parties, then, and in that case, it shall be within the power of the court to make parties defendant of all persons so claiming the office and not made parties by the Attorney-General: *Provided*, That the said persons so desiring to be made parties shall be required to set forth, by petition under oath, a *prima facie* case of right and title to the office before the court can be required to make the order, and to give security to the satisfaction of the court for the payment of all costs which may be awarded against him.

Sec. 2. That any person claiming title to an office which is exercised by another·shall have the right, upon refusal by the Attorney-General, to institute proceedings in the name of the State upon such claimant's relation, or upon the Attorney-General's refusal to file a complaint setting forth his name as the person rightfully entitled to the office, to file on information, or institute an action in the name of the State against the person exercising the office, setting up his own claim. In this case the court is authorized and required, in any and all events, to determine the right of the claimant to the office if he so desires : *Provided, however*, That in this, as well as in all other proceedings of this character, no person shall be adjudged entitled to hold an office except upon full proof of his title to the office.

Sec. 3. In all cases where an individual institutes an action without the consent of the Attorney-General, the judgment shall be conclusive as between the parties other than the State ; such judgment shall not be a bar to any *quo warranto* proceeding by the State, nor shall a judgment in such proceeding instituted by the Attorney-General be a

bar to proceedings by any claimant other than the parties thereto. The party recovering the judgment shall, however, be entitled to exercise the office until removed by *quo warranto* proceedings, or until his right thereto shall otherwise cease.

SEC. 4. Where the Attorney-General institutes an action setting forth the name of the person rightfully entitled, or files on information upon the relation of a party claiming title, the Attorney-General shall not have the right to dismiss such proceedings without the consent of the claimant, but the court shall investigate the claim and determine the right, if so desired by the person upon whose relation the information is filed; and such claimant may have counsel of his own choice to control the proceedings in his behalf.

*A. A. Knight*, for Appellants, cited: High on Extra. Rems., §630; State vs. Boal, 46 Mo., 528, as to second defence; and Greencastle vs. State, 28 Ind., 382; Martinsville vs. Frieze, 23 Ind., 507; Cooley's Con. Lim., 151–2; People vs. Mahoney, 31 Mich., 497; Walker vs. Caldwell, 4 La. Ann., 297; 5 La. Ann., 94; Meek vs. Detroit, &c., 30 Mich., 511, as to the sixth defence.

*Fleming & Daniel* and *The Attorney-General*, for the Appellees, cited as to the second defence: High's Ex. Rems., Secs. 712, 713, 716; 4 Cowen, 118; State vs. Gleason, 12 Fla., 265; and as to the sixth defence, McAunich vs. Miss., &c., R. R., 20 Iowa, 338; 17 Cal., 547; McConihe vs. McMurray, 17 Fla., 238; ex-parte Pollard and ex-parte Woods, 40 Ala., 77; People vs. Mahaney, 13 Mich., 481; Spencer vs. State, 6 Ind., 41; Branham vs. State, 10 Ind., 497; Gibson vs. State, 16 Fla., 291.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This is an information in the nature of a *quo warranto,*

prosecuted by the Attorney-General of the State, in the name and by the authority of the State, upon the relation of the appellees.

The information is brought to try the right and title of the appellants to have and exercise the franchises and powers appertaining to the Board of Health of the City of Fernandina. Through the information it is alleged that the City of Fernandina is and was, on the 7th of March, A. D. 1881, an incorporated city, and contained at that time, and from that date to the date of the information, more than 300 registered voters; that the relators were, on the 15th March, A. D. 1881, appointed by the Governor of the State of Florida a Board of Health for said city by virtue of the provisions of Chapter 3312, of the Laws of Florida; that James McGiffin is Chairman of the Board of County Commissioners of Nassau county and *ex-officio* a member of said Board of Health; that said relators with said Mayor are the duly authorized Board of Health of said city, and are entitled to exercise the privileges and powers of such Board.

The information then informs the court by the Attorney-General, in the name and authority of the State of Florida, that the respondents, naming them, have, for the space of four months last past and upwards, claimed to be members of such Board of Health, and have, with Clinton Haley as Mayor of said city, exercised the powers appertaining thereto without warrant or authority of law, and that upon the people of the State of Florida they have, and still do, usurp such rights, powers and franchises to the damage, &c.

The prayer of the information is for process against the respondents and appellants to answer to the State of Florida by what warrant and authority they exercise the powers and franchises aforesaid.

The answer of the respondents to the information consists of eight grounds, but only two of them are insisted upon in this court.   They are the second and sixth grounds, and are as follows :

Second. That it is not true, as alleged in the affidavit of affiant Starbuck, that relators were on the 15th of March, A. D. 1881, appointed by the Governor of the State of Florida a Board of Health for the city of Fernandina, as set out more fully in affiant Starbuck's affidavit, but on the contrary if said relators have any appointment at all as a Board of Health this appointment and commission constitutes them a Board of Health for Nassau county, Florida, and not for the said city of Fernandina.

Sixth. That they are informed and believe that the act of March 7, 1881, Chap. 3312, Laws of Florida, under which relators' claim, is unconstitutional, in that said act is special and local, and also because it is not general in its character and effect.   The answer further sets up the fact of the election of Haley as Mayor and the other respondents as Aldermen of said city at an election on the 4th day of April, A. D. 1881, and that they have taken the oath of office and entered upon the discharge of their duties.

To this answer the Attorney-General demurred.   The grounds of the demurrer, so far as the counts relied upon in this court are concerned, were that the respondents must either disclaim or show full title, that it was no defence to show a want of title in the relators, and that the act of March 7, 1881, is constitutional and abrogates Section 1, Chapter 3162, so far as the same applies to cities containing 300 or more registered voters.   And after hearing upon the demurrer it was sustained, and there was judgment of ouster, by which it was considered and adjudged that the respondents, (not including the Mayor) or any of them, do not intermeddle with or exercise the office of member of

the Board of Health of the city of Fernandina, and they and each of them were prejudged and excluded from holding said office or offices.

From this judgment of ouster this appeal is prosecuted.

From the statement of the case it is evident that there are but two questions raised in this appeal. The first is, whether the relators not being a Board of Health for the city of Fernandina is a good answer to the information. It is true that the information sets up title in the relators, but it is also true that the State, through the Attorney-General, charges usurption upon the respondents, and the judgment of ouster does not in any manner adjudicate the right of any other party to the office or offices, nor does the prayer of the information extend beyond a simple judgment of ouster against the respondents.

The rule upon this subject anterior to the act of February 2, 1872, Chapter 1874, Laws of Florida, was that if the pleadings show a good cause of action in favor of the State, a demurrer would not be sustained upon the ground that it appeared that the relator was not entitled to the office. The question in such proceeding was not simply whether the claimant upon whose relation the information was filed was entitled to the office, but also whether the respondent was entitled to it as against the State. In this information the State, through the Attorney-General, charges usurption and requires the respondents to show by what warrant they exercise the office and franchises named, and it is no defence for them to say that some other person is not entitled, because a want of title in another, even though this other be the party who claims the office and upon whose relation the information is made gives them no right. Because A. is not entitled to an office does not prove that B. is. The State's right is to oust B. if he does not show title. State vs. Palmer, 24 Wis., 63.; State ex rel. Attorney-General, 12

Fla., 265. The primary right to the office is in the State, and unless the party exercising its franchises shows a right to it he is a usurper and must be ousted.

The act of February 2, A. D. 1872, does not change this rule. The first section of that act gives the court the power, where the Attorney-General fails to make all claimants parties, to make them parties upon their own petition. Its purpose was to prevent any discretion of the Attorney-General intervening so as to prevent a determination of the right of any claimant of an office to it when the right to that office became the subject of inquiry by the State through him.

The second section of that act gives a party claiming an office the right to institute proceedings in the name of the State upon his own relation, if the Attorney-General refused so to do.

The third section of the act does nothing more than define the effect of a judgment where the individual institutes the proceeding without the assent of the Attorney-General, and the fourth section denies the Attorney-General the right to dismiss proceedings without the consent of the claimant, when the information has been filed by him upon such claimant's relation.

It is clear that there is nothing here by which the respondents can claim that a judgment of ouster against them cannot be awarded, because the claimant upon whose relation the information is filed does not establish his right.

This disposes of the matter set up in the second ground of respondents' answer.

The next and last question involved in this case is the constitutionality of the act of March 7, 1881, Chapter 3312, Laws of Florida, entitled "An act to provide for the appointment of Boards of Health for incorporated Cities and Towns in this State containing three hundred or more reg-

istered voters," in so far as the act proposes to divest the Aldermen and City Physician of the City of Fernandina of their offices as members of said Board, and to vest the offices in the appointees of the Governor.

The Aldermen and City Physician held their offices under the act of March 11, 1879, Chapter 3162, Laws, entitled " An act to provide a uniform system of Quarantine in this State." The first section provided that the Mayor, Aldermen and City Physician, if there be one, of every incorpated city or town in this State shall be and are hereby constituted a Board of Health for said incorporated city or town, and when there is no incorporated town or city the Board of County Commissioners shall constitute a Board of Health for such county.

The remaining sections of the act simply bestow powers in reference to quarantine regulations upon this Board of Health.

The first section of the act of March 7, 1881, Chapter 3312, Laws, provides that the Governor of the State of Florida shall appoint, for every incorporated city and town in this State containing three hundred or more registered voters, a Board of Health, consisting of five discreet persons, not less than two of whom shall be medical men of acknowledged skill and experience, to serve without pay. All vacancies occurring shall be filled by appointment made by the Governor.

The second section of the act provides that the Mayor of the city and Chairman of the Board of County Commissioners shall be ex-officio members of the Board.

Section three fixes the term of office of these appointees. Section four gives full powers as to public health, abatement of nuisances and vital statistics. The fifth section provides that this Board, as to the matters of quarantine, shall have all the powers conferred upon Boards of Health

in the act of March 11th, 1879, and the sixth and last section enacts as follows : " This act shall in no wise be construed as repealing section one of an act entitled an act to provide a uniform system of Quarantine in this State, approved March 11, 1879, so far as it relates to cities and towns of less than three hundred registered voters."

The first objection, based upon constitutional limitations upon the power of the Legislature, to this legislation is that this act is not uniform in its operation. Accepting the view that this constitutional limitation is applicable to this legislative action, we think it clear that its operation is uniform within the meaning of the limitation fixed by the Constitution.

This enactment applies to *all* cities and towns containing three hundred or more registered voters. The exercise of legislative power is positive and fixed in its results. There is neither local option nor discretion in the matter of its application. It creates a class of municipal corporations with powers regulated by the number of its registered voters, that being the standard rule by which the class is fixed and ascertained. If the city or town belongs to the class created by the law, the act operates *proprio vigore* without reference to the assent or dissent of the municipalities or the electors within them. As to the class created the powers are uniform and identical. We simply follow and affirm the views expressed by this court in the case of McConihe vs. McMurray, 17 Fla., 238, in the conclusion we here reach, which is that this act is not subject to the objection of a want of uniformity in its operation within the meaning of that term as used in the Constitution when limiting legislative power in this respect. McConihe, Mayor, vs. The State of Florida *ex rel.* McMurray, 17 Fla., 238.

Another objection here urged, based upon organic limitations upon legislative power, is that this legislation is

prohibited by Section 14, Article 4, of the Constitution, which provides that each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title, *and no law shall be amended or revised* by reference to its title only ; but in such case the act as revised, or the section as amended, shall be re-enacted and published at length.

The question here is, is this a revision of an act or an amendment of a section of an antecedent law within the meaning of this limitation upon the power of the Legislature in the matter of revision of antecedent laws, or the amendment of sections of prior statutes. The antecedent law upon which this act (Chapter 3312, Laws,) operated created a Board of Health with powers restricted to quarantine regulations. Such was the express declaration of the Legislature, the title of the act being " An act to provide a uniform system of Quarantine in this State," and an examination of the act will show that all of the powers conferred were incident to the creation of a general or " uniform " quarantine system. The purpose of the Legislature in the subsequent law here was not to revise that act in the sense in which that term is used in the Constitution. It is certainly true here that no single section of the subsequent act can be considered as in lieu of any single section in the preceding, nor can the entire subsequent act be considered in lieu of the preceding act. Every section of the preceding act is left operative as to municipalities not embraced in the clas created, nor is the subsequent act confined in its operation to the matters involved in the prior act. The purpose of the prior act was to establish a system of quarantine. The second not only regulated the matter of quarantine as affecting public health, but gave enlarged powers as to the public health in that it bestowed, in addition to

the powers appertaining to quarantine regulations, a general power in regard to all matters pertaining to the public health and vital statistics, as well as the power to abate nuisances. The purpose of the Legislature was not to amend the first section of the prior act here in the sense that it was intended to so change its phraseology as to strike out any clause of it and cause that portion stricken out to cease to be law, and that portion inserted to become law in lieu thereof. The Legislature declares its intent as to the first section of the subsequent act here to be not a general repeal of the antecedent legislation which existed upon the subject of quarantine or Boards of Health in municipalities having less than three hundred voters. Its purpose was to create a new Board of Health for a new class of municipalities, with enlarged powers and duties, leaving the existing system operative as to the other municipal organizations not embraced in that class. It was independent, not revisory or subordinate or amendatory legislation. It was legislation inconsistent with and in denial of the future right of Boards of Health, as then organized, to exercise any power in the new class created, and its operation, so far as it creates a new Board of Health, (Sections 1 and 4,) is by independent and direct legislation.

The effect of the act of March 7, 1881, is by implication and repeal to prevent the enlarged operation of Section one of the Act of March 11, 1879, by limiting its operation to towns and cities having less than 300 voters. To that extent the Legislature in effect declares its purpose to repeal the antecedent legislation, and we do not think that it is an amendment of a section or the revision of an act within the meaning of the constitutional limitations upon these subjects.

In the language of Judge Cooley, " a law which does not assume in terms to revise, alter or amend any prior act or

section of an act, but by various transfers of duties has an amendatory effect by implication," is constitutional. "It is not the meaning of this provision of the Constitution that upon the passage of each new law all prior laws which it may modify by implication shall be re-enacted and published at length as modified." The other cases cited by appellees here abundantly sustain our conclusions. The objection that the subject of the law is not briefly expressed in the title, we understand, is withdrawn; but if it is not, there is plainly nothing in it, as the title here does briefly and plainly express the subject to be legislated upon.

Judgment affirmed.