STATE, *ex rel.* Cary D. Landis, as Attorney General, v. RAYMOND HARRIS and JOHN S. BOND, JR.

163 So. 237.

Opinion Filed June 11, 1934.

On Rehearing October 3, 1935.

556

*Cary D. Landis,* Attorney General, and *Evan Evans* and *Will O. Murrell,* for Relator;

*Giles J. Patterson, Henry P. Adair, A. W. Cockrell, Jr., Francis P. Fleming, Francis M. Holt, Charles Cook Howell, W. D. Jones, Jr.,* and *E. J. L'Engle,* for Respondents.

## STATEMENT.

The Attorney-General filed in this court an information in the nature of quo warranto in which it is in substance alleged that respondents "for the space of, to-wit, six months next last past and upwards have used, enjoyed, exercised and performed and still do use, enjoy, exercise and perform, without warrant or authority of law, and in violation of the Constitution of the said State of Florida, the franchise, functions and powers of Jury Commissioners of Duval County, Florida * * * as authorized or required by Chapter 16058, Laws of 1933," which said law is in violation of stated sections of the Constitution of Florida, viz.: Sections 16, 20 and 21, Article III, Sections 1, and 3 of the Declaration of Rights of the Florida Constitution.

"The said Attorney General prays the advice of this Court in the premises and due process of law in this behalf to the said Raymond Harris and John S. Bond, Jr., as alleged Jury Commissioners of Duval County, Florida, requiring them to answer the said State by what warrant or authority of law they claim to have and exercise jurisdiction and authority as Jury Commissioners of Duval County, Florida, and that this Honorable Court upon and after a

hearing in due course as prescribed by law, shall enter its order ousting the said Respondents, from the said office."

A writ was issued in due course. Respondents filed a demurrer to the information containing the following:

"1. Chapter 16058, Laws of Florida, approved June 3rd, 1933, is not obnoxious to the constitutional provisions set forth in said information.

"2. The information in the nature of quo warranto in this cause does not state any matters of fact or reasons in law why the respondents should not continue to use, enjoy, exercise and perform the franchise, functions and powers of jury commissioners of Duval County, Florida.

"3. It appears on the face of the information in the nature of quo warranto herein that the respondents are lawfully and rightfully exercising the functions, powers and official duties of jury commissioners of Duval County, Florida."

The Relator filed a motion for judgment of ouster:

"Comes now the Relator herein and moves the Court to enter a judgment of ouster against the respondents above named, as prayed for in the information filed herein, ousting the Respondents from their pretended office of Jury Commissioners of Duval County, Florida, on the ground that no sufficient response has been made by the respondents to the information herein and the information herein being shown to be well founded, and the facts therein set forth being shown to be true."

Chapter 16058. Acts of 1933. is as follows:

"AN ACT Providing For and Creating Jury Commissioners in all Counties of the State of Florida Having a Population Exceeding 155,000 by the Last Preceding Federal Census, and Prescribing Their Qualifications, Method of Appointment, Powers, Duties, Functions and Official

Terms, and Providing for the Selection, Listing and PRO-CUREMENT of Jurors in Such Counties.

"Be It Enacted by the Legislature of the State of Florida:

"Section 1. That the Governor shall appoint in each County of the State of Florida having a population exceeding 155,000 inhabitants by the last preceding federal census two Jury Commissioners, each of whom shall be a resident of such county. As early as practicable after this law becomes effective, one of said Jury Commissioners shall be appointed by the Governor to hold office for the term ending on the First Tuesday after the first Monday of January, A. D. 1935, and the other shall be appointed by the Governor to hold office for the terms ending on the First Tuesday after the first Monday of January, A. D. 1936. Their respective successors, who shall be appointed by the Governor, shall hold office for terms of two years each.

"Section 2. The Jury Commissioners in such counties shall select and list not less than 800 or more than 1500 in number of male inhabitants of such county known or believed to be qualified under the laws of Florida to be jurors, who even if exempt have not filed a written claim of exemption from jury duty as hereinafter provided. In making the selections and the preparation of said lists, the Jury Commissioners may confer with the Judge or one or more of the Judges of the Circuit Court of such county, and shall have the power, without charge or cost, to examine at any reasonable time or times all documents and records in the office of the Clerk of the Circuit Court and of any other county officials as to persons who have been listed, summoned, not found, served or excused as jurors, and all books, records and lists in the office of the Supervisor of Registration or other county official containing the names of electors of such county. .

"Section 3. Such list of jurors in each county shall be completed by the Jury Commissioners and certified by them during and before the end of January of each year, and at such other period or periods, during the year as may be ordered by a Judge of the Circuit Court of such county. Every such list shall be submitted to and approved by the Circuit Judge or one of said Circuit Judges, such approval to be evidenced by his signature thereon. When so certified and approved, such list of jurors shall be recorded by the Clerk of the Circuit Court in the minutes of such Court without charge therefor. Said List so certified, approved and recorded, although it may be defective or irregular in form, certification, approval or other formal requirement, or in the number of qualification of the persons so named, shall be the basis for copying the listed names on separate pieces of paper to be deposited and preserved in the box whence the names of persons for jury duty are to be drawn as prescribed by law. It shall not affect the validity of such list or any listed or copied name if there should be any error or irregularity in either, each person so procured or listed as a juror being presumed to be the one intended to be listed as a juror. When the annual jury list or special jury list prepared pursuant to the order of a Circuit Judge is certified, approved and recorded, the box containing the name of jurors previously listed shall be emptied and all names removed therefrom before such newly listed names are placed in such jury box. If, notwithstanding this provision, some names or papers containing names remain in the jury box, such errors or irregularity shall not invalidate the contents of the box or the procurement of any jurors by drawing names therefrom or any subsequent proceeding or jury.

"Section 4. That every person claiming to be exempt

from jury duty in any such county shall annually, on or before the 31st day of December of each year, file with the Clerk of the Circuit Court an affidavit claiming exemption from jury duty and stating the grounds therefor, which affidavit shall be filed by the Clerk and transmitted promptly to said Jury Commissioners. If any person claiming any such exemption shall fail or refuse to file such affidavit of exemption from jury duty within the time above stated, he shall not be entitled to have the privilege of exemption from jury duty during the calendar year succeeding that during which he was required to file his affidavit of exemption as aforesaid. In preparing the jury list, the Jury Commissioners shall examine all written claims of exemption from jury duty which were filed on or before the preceding December 31st, and shall omit from such jury list the names of all persons who shall be entitled to exemption from jury duty and who have filed such written claims of exemption within the time stated hereinabove. If any claim of exemption from jury duty shall be disallowed by the Jury Commissioners, the person claiming exemption, having filed his written claim therefor as aforesaid, may renew his claim of exemption in any court in which he may be summoned as a juror.

"Section 5. Each Jury Commissioner shall be paid out of the General Fund of the County an annual salary of One Hundred Dollars ($100.00) and his actual expenses incurred or paid in the performance of his official duties, upon his requisition therefor containing an itemized statement of his expenses, which shall be approved by one of the Judges of the Circuit Court of such county before being entitled to payment.

"Section 6. If any part of this Act shall be unconstitutional, the remainder shall not be affected thereby; and

all laws and parts thereof in conflict herewith are hereby repealed.

"Section 7. This Act shall take effect upon its becoming a law.

· "Approved June 7, 1933.

· WHITFIELD, J.—Quo warranto proceedings were instituted in this Court by the Attorney General to have determined the constitutional validity of Chapter 16058, Acts of 1933, under which the respondents are performing the function of selecting and certifying names of persons qualified for jury duty, which duty had theretofore been performed by the county commissioners.

· It is in substance contended that Chapter 16058 is a local and not a general law, and thereby violates the provisions of Section 20, Article III of the Constitution which forbid the passage of special or local laws "regulating the practice of courts of justice" and "summoning and empaneling grand and petit juries"; and that if a local law is permissible on the subject of the Act, a notice of intention to apply for its enactment was not published as required by Section 21, Article III of the Constitution, the Act is invalid.

It is argued that Chapter 16058 is a local law because it covers only one county and was treated by the Legislature as a local bill in passing it; that the classification as made of counties by population is arbitrary and without any reasonable basis; and that the classification is therefore illegal and fails, thereby making the Act in legal effect a local law.

· The treatment of the bill as a local bill by placing it on the calendar of local bills in the process of its enactment does not make it a local law if in legal effect it is a general law and was enacted according to the essential requirements for enacting all statutes. If a classification is legal to make a general law, the fact that it embraces only one county

does not make it a local law. Givens v. County of Hillsborough, 46 Fla. 502, 33 So. 88, 110 Am. St. Rep. 104.

Different sections of the Constitution relate severally to (1) subjects upon which no special or local law shall be passed (Secs. 20 and 25, Art. III) ; (2) subjects which must be regulated by general laws (Sec. 22, Art. III, and Sec. 4, Art. VIII, Sec. 9, Art. XII, as amended in 1926; see also Sec. 1, Art. IX, Sec. 1, Art XII) : (3) subjects which may be regulated by general or by local laws (Secs. 21 and 24, Art. III; Sec. 5, Art. IX). Except in cases covered by Section 8 of Article VIII (State v. Comrs. Duval Co., 23 Fla. 483, 3 So. 193; Middleton v. City of St. Augustine, 42 Fla. 287, 29 So. 421, 89 Am. St. Rep. 227) or by other express or implied provisions of organic law (see State v. O'Neal, 100 Fla. 1277, 121 So. 165) ; "no local or special bill shall be passed unless notice of the intention to apply therefor shall have been published" and the publication shown as required by law. Sec. 21, Art. III, as amended in 1928. The proviso to Section 21, Article III, relating to notice of proposed local laws was not complied with in enacting Chapter 16058, and if it is a local law, it is invalid.

Within the contemplation of the constitution, a special law is one relating to, or designed to operate upon, particular persons or things (Citizens Bank & Trust Co. v. Mabry, 102 Fla. 1084, 136 So. 714), or one that purports to operate upon classified persons or things when classification is not permissible or the classification adopted is illegal (Knight v. Board Public Inst., 102 Fla. 922, 136 So. 631) ; a local law is one relating to, or designed to operate only in, a specifically indicated part of the State (State *ex rel.* v. Crandon, 105 Fla. 309, 141 So. 177), or one that purports to operate within classified territory when classification is not

permissible or the classification adopted is illegal (Anderson v. Board of Public Instruction, 102 Fla. 695, 136 So. 334).

· A general law operates universally throughout the State, or uniformly upon subjects as they may exist throughout the State, or uniformly within permissible classifications by population of counties or otherwise, or is a law relating to a State function or instrumentality. See 59 C. J. 728, 732 *et seq.;* Lake v. Palmer, 18 Fla. 501.

If particular physical conditions exist in only a portion of the State, enactments with reference thereto may be general laws; e. g. laws regulating fishing in "the waters of the State of Florida," or in "the rivers, creeks, bays, bayous, or other such waters on the coast of the State of Florida," are general laws, though some waters do not exist universally in every part of the State. Carlton v. Johnson, 61 Fla. 15, 55 So. 975. See also Bloxham v. Florida Central and Peninsular Railroad Co., 35 Fla. 625, 17 So. 902. But a statute regulating fishing in "the salt or fresh waters of" specified but not classified counties of the State when salt or fresh water fish exist in other sections of the State, is a local law. Stinson v. State, 63 Fla. 42, 58 So. 722. See also Southern Drainage District v. State, 93 Fla. 672, 112 So. 561.

Statutes operating upon proper classifications of the subject regulated may be general laws within the meaning of the Constitution. See *Ex parte* Wells, 21 Fla. 280; McConihe, Mayor, *ex rel.* McMurray, 17 Fla. 238; Anderson v. Board, 102 Fla. 695, 136 So. 81; State, *ex rel.* v. Love, 99 Fla. 333, 126 So. 374, headnote II. Givens v. Hillsborough Co., 46 Fla. 502, 35 So. 88; State, *ex rel.* Buford, v. Shepard, 84 Fla. 206, 93 So. 667; Whitaker v. Parsons, 80 Fla. 352, 86 So. 247; Collier v. Cassady, 63

Fla. 390, 57 So. 617; State v. Jacksonville Term. Co., 41 Fla. 363, 27 So. 221, headnote 1.

As to classifications, this court has announced the rule that:

· "When a classification of counties for governmental purposes based upon population or otherwise is made by the Legislature in the enactment of general laws for governmental purposes in regard to the counties classified, if any state of facts can reasonably be conceived that will sustain the classification attempted by the Legislature, the existence of that state of facts at the time the law was enacted, will be presumed by the courts, and the deference due to the legislative judgment in the matter will be observed in all cases where the court cannot say on its judicial knowledge that the Legislature could not have had any reasonable ground for believing that there were public considerations justifying the particular classification and distinction made." Anderson v. B. P. I., 102 Fla. 695, 136 So. 334. See also Hiers v. Mitchell, 95 Fla. 345, 116 So. 81.

· The classification of the counties of the State into two classes, viz.; larger counties and smaller counties, for purposes of statutory regulation, appears to be a legislative policy that has been sustained where classification is permissible and the classification made is appropriate to the subject regulated and to the particular regulation. Such for example as enactments regulating the registration of electors (Chap. 9295, Acts of 1925, Sec. 367, C. G. L. 1927); regulating fees of certain county officers (Chap. 15984, Acts of 1933, Sec. 4589 (1) 1934 Supp. to C. G. L., 1927, held invalid, not for the classification but for defective title, State, ex rel., v. Howell, 112 Fla. 852, 151 So. 299); regulating the business of making small loans in certain counties (Chap. 10177, Acts of 1925, Secs. 3999, et seq.,

C. G. L., held valid in Beasley v. Cahoon, 109 Fla. 106, 147 So. 288) ; and perhaps other enactments. See also State, *ex rel.,* v. Daniel, 87 Fla. 270, 99 So. 804; Sparkman v. Budget Com., 103 Fla. 242, 137 So. 809.

Under Sections 20 and 21 of Article III and the other sections of the Constitution, there are some subjects of legislative regulation as to which the counties of the State may reasonably be classified according to population in enacting statutes, thereby giving to such statutes, a general operation within the classified counties, though not a universal operation throughout the State, as, for example, some matters of administrative or other governmental regulations and activities, State, *ex rel.* Buford, v. Daniel, 87 Fla. 270, 99 So. 804; Beasley v. Cahoon, 109 Fla. 106, 147 So. 288; Sparkman v. Budget Com., 103 Fla. 242, 137 So. 809.

But even where classification is permissible, if the classification made is not reasonable and practicable with reference to the subject regulated and the nature of the regulation, the enactment will not be a general law. Anderson v. B. P. I., 102 Fla. 695, 136 So. 334.

There are some subjects of statutory regulation which, because of their inherent nature or because of some express or implied organic limitations, are required to be of universal operation throughout the State. Such, for example, as the disposition of State and county tax sale certificates. State, *ex rel.,* v. Quinn, decided here March 8, 1934. This rule of universality of operation throughout the State may well be applied in *prescribing the qualifications* of grand and petit jurors.

Prior to the enactment of Chapter 16058, Acts of 1933, the duties involved in selecting and certifying jury lists were conferred by general laws upon the county commissioners in

all of the several counties of the State (Chap. 4444 [2772] *et seq.,* C. G. L.). Chapter 16058 in effect classified all the counties of the State into two classes viz.: all counties "having a population exceeding 135,000 inhabitants by the last preceding Federal census" are placed in one class wherein' the duties are conferred upon "two Jury Commissioners," while all the counties of the State having a population of 155,000 or less are left in another class wherein the duties as' theretofore are to be performed by the county commissioners of each county. Thus all the counties of the State are divided into two classes for statutory regulations as to the officers upon whom is conferred the duty of selecting and certifying the names of persons who are qualified for jury service, the qualifications of the persons to be so selected and certified being the same in every county in the State as defined by general law. Secs. 4443 (2771) and 4444 (2772) C. G. L.

This differentiates the classification from that held invalid in Jordan v. State, *ex rel.,* 100 Fla. 494, 129 So. 747, wherein fixing the number of names to be selected for jury duty in the County Judge's Court, the classification was of counties having a population between 40,000 and 43,000, leaving a small margin for other counties to enter the class as formed by an increase or a decrease in their population respectively. In the latter case there was an *intermediate* classification not appropriate to the subject regulated. See also Stripling v. Thomas, 101 Fla. 1015, 132 So. 824; Whitney v. Hillsborough Co., 99 Fla. 628, 127 So. 486; Anderson v. Board, 102 Fla. 695, 136 So. 334; Knight v. Board, 102 Fla. 923, 136 So. 631.

In the larger counties of the State, the various and onerous duties of the county commissioners or other considerations may in the judgment of the Legislature be suf-

ficient to justify the classification of the counties of the State into two classes, the larger counties and the smaller counties, and to provide that in each of the larger counties so classified, the duties theretofore imposed upon the county commissioners with reference to *selecting and certifying* names of persons for jury duty, shall be conferred upon other officers; but a more extended classification of the counties of the state by population in conferring such duties upon different classes of officers may not be permissible in view of the inherent nature of the duty which the law contemplates shall be performed with uniformity throughout the State at least with reference to classifications of the larger and the smaller counties. There is only one county now in the class of larger counties under Chapter 16058, but two other counties have each nearly the required population to enter the present larger county class, and the Legislature may lower or, if advisable later, raise the population dividing line between the two classes.

The principal provisions of Chapter 16058 relate (1) to the qualifications of the persons who may be selected for jury duty, and (2) to the officers who are to perform the statutory functions. The statute does not regulate "the practice of courts of justice" and does not regulate the "summoning and empaneling of grand and petit juries"; but the provisions of the statute do have some relation at least to "summoning annd empaneling grand and petit juries," and classifications for statutory enactments on such subjects should have relation to comprehensive uniformity of regulations to the end that essential provisions on such subjects shall be as near uniform throughout the State as possible, consistent with efficient administration of the law in the various counties of the State.

In substance, Chapter 16055 required the selection of

"male inhabitants of the county known or believed to be qualified under the laws of Florida to be jurors."

Section 4443 (2771) Compiled General Laws, prescribes the qualifications and disqualifications of grand and petit jurors. Section 4444 (2772) requires the county commissioners to select "from the list of male persons who are qualified to serve as jurors under the provisions of Section 4443, and personally select and make out a list * * * of persons qualified to serve as jurors, who, in addition to the qualifications above mentioned, shall be such persons only as the said commissioners know, or have good reason to believe, are law abiding citizens of approved integrity, good character, sound judgment and intelligence, and who are not physically or mentally infirm, which list shall be signed and verified by the said commissioners as having been personally selected, as aforesaid, and as possessing the prescribed qualifications according to their best information and belief."

In substance, Chapter 16058 requires the selection and listing of male inhabitants of the county known or believed to be qualified under the laws of Florida to be jurors; and requires such list to be certified by the commissioners. Such provisions in effect require the jury commissioners under the new Act to select and certify names of persons who are qualified for jury duty in accordance with existing general laws. Other provisions in Chapter 16058 not contained in the prior general law do not affect the qualifications of those required to be selected for jury duty; and as the provisions prescribing qualifications of the persons to be selected for jury service are of uniform operation throughout the State under both the prior general law and the later Act, there can be no question of classification as to such qualifications. The *number* of names to be selected and

certified in larger counties and in smaller counties is a matter that should be regulated under *proper* classifications. There are existing statutes on that subject. Secs. 4445 (2773), *et seq.,* C. G. L.; Secs. 4450 (1) *et seq.,* 1934 Cum. Supp. to C. G. L. Classifications of counties by population for creating county officers are permissible even if only one county is in a class. State, *ex rel.* Buford, v. Daniel, 87 Fla. 270, 99 So. 804. There is no organic right to have the names of persons who are qualified for jury duty selected by the county commissioners.

Chapter 16058 does not violate Section 16, Article III, relating to the title of the Act, or Section 3 of the Declaration of Rights of the State Constitution, relating to the right of trial by jury. Errors in numbering bills in process of enactment are not fatal to the bills. See Volusia County v. State, 98 Fla. 1166, 123 So. 375.

If any of the incidental regulations contained in Chapter 16058 are invalid, they may be disregarded without impairing the efficiency of the essential portions of the Act. See Section 6 of the Act. Courts determine the validity and interpretation of the statutes, not their policy.

The foregoing statement of the law of this case is concurred in by Mr. Chief Justice DAVIS and Mr. Justice TERRELL. It is not agreed to by Mr. Justice ELLIS, Mr. Justice BROWN or by Mr. Justice BUFORD, whose views are severally stated in separate opinions filed herein as dissents from the views expressed in this opinion.

A concurrence of a majority of the members of this Court being necessary to declare Chapter 16058, Acts of 1933, unconstitutional and thereby enter a judgment ousting the respondents from the offices to which they have been appointed under the assailed Act, it follows that this quo warranto must fail, annd that the present proceeding must

be dismissed without prejudice to the constitutional questions involved. And it is so ordered on the authority of State, *ex rel.* Landis, Atty. General, v. Williams, 112 Fla. 734, 151 Sou. Rep. 284.

Davis, C. J., and Terrell, J., concur in the opinion.

Ellis, Brown and Buford, J. J., dissent from the opinion.

Davis, C. J., and Whitfield, Ellis, Terrell, Brown and Buford concur in the order entered.

Davis, C. J. (concurring with Whitfield, J.).—If with reference to the manner of preparing a jury box the Legislature has any power at all to classify counties according to population, and all of the opinions expressed in this case appear to concede that such power exists (at least to the extent of dividing the State into two classes; large and small counties), then it seems to me to logically follow that the Legislature is the judge of where shall be placed the particular line dividing large counties from the small counties. And if the Legislature elects to say that the only counties having more than 155,000 are to be considered as within the top (or large class) I think it has the power to make that determination, even though other counties may nearly approach that same figure. There will likely always be some county or counties near to any figure that may be adopted as the line of division. I therefore concur in the opinion of Mr. Justice Whitfield which gives the benefit of a substantial doubt in the premises to the validity of the legislative Act assailed on the score of unreasonableness in the classification adopted.

Buford, J. (dissenting).—I think Chapter 16058, Acts of 1933, is purely a special and local Act and that Section 21, Article III, of the State Constitution, was not complied with in connection with the introduction and passage of

the Act. I fully realize that like legislative Acts have heretofore been held to be general laws and not within the purview of the above mentioned section of the Constitution, but I think such holdings were unfortunate and contrary to the letter and spirit of the Constitution. The Act was intended to apply to only one county and its operation is as clearly limited as if the name of the county had been used instead of the so-called classification.

ELLIS, J. (dissenting).—I agree with Mr. Justice BUFORD, that Chapter 16058, Acts of 1933, is a local Act and that in its enactment Section 21 of Article III of the Constitution was not observed. It is a local Act because the purpose of the attempted classification was obviously disingenuous. Whether such legislation is wise this Court has no power to question. The test as to the validity of classification for purposes of legislation is good faith. See Hayes v. Walker, 54 Fla. 163, 44 South. Rep. 747.

That element may be inquired into. The Act can be upheld only upon the theory that it is general legislation. If it operates and applies uniformly upon all places of the class requiring that particular kind of legislation it is a general law, but the class must be germane to the purpose of the law and must be characterized by some substantial qualities or attributes which render such legislation necessary or appropriate for the numbers or places within the class. See 25 R. C. L. 817, and the long list of authorities cited in support of the text. If the classification is false or deficient, it is not reasonably possible to discern some particular necessity applicable and necessary or even especially convenient to the particular class to which the legislation applies then the classification is obviously unfair and not made in good faith. It is impossible for legislative fiat to create that situation. It must exist before the legislative wisdom

acts upon it in the form and by the means provided by the Act.

If that condition is not found in the lives and necessities of the people, if there is not a reasonably close relation between the basis of classification and the evil to be corrected or the convenience to be provided, then the classification is arbitrary and not in good faith.

. Such classification as the Legislature attempted to make in the passage of Chapter 16058, *supra,* this Court has at other times held to be valid, but as Mr. Justice BUFORD, said in his dissenting opinion, such holdings have been unfortunate and contrary to the letter and spirit of the Constitution wherever this Court in upholding the laws has not pointed out the logical connection, the reasonable relation between the basis of classification and the necessities growing out of the existence normally, logically, of the natural classification.

The Act in question deals with the selection of persons whose names constitute a jury list from which the selection of grand and petit jurors is to be made in the State business of administering justice in the county which falls within the classification fixed by the Act.

There are several features of the Act which are especially applicable to the county which comes within the classification. Some of them are: Two Jury Commissioners are to be substituted in the place of the County Commissioners in the matter of selecting jury lists. They are vested with the power of omitting from the list the names of persons claiming exemption from jury duty and who file their statements and supporting affidavits on or before December 31st of each year. If any person claiming exemption from jury duty fails to file his affidavit of exemption he shall not be entitled to have the privilege of exemption from jury duty

the succeeding year. The Commissioners are to receive a salary of one hundred dollars per annum each and actual expenses incurred in the performance of his duty. The jury list is to be approved by the "Circuit Judge or one of said Circuit Judges." When the jury list is made and copies of the names made on separate slips of paper and put in the jury box, if there are any names left in the box from the preceding year the fact is not to "invalidate the contents of the box" or the "procurement of any jurors by drawing names therefrom." The Commissioners are empowered to select the names of the "male inhabitants of such County known or believed to be qualified under the laws of Florida to be jurors."

Just why such method of selecting and preparing a jury list annually is especially necessary or reasonably convenient in counties having a population exceeding one hundred and fifty-five thousand and not necessary or reasonably convenient in a county of one hundred and fifty-five thousand population or less, neither the existing conditions, the nature of the duties to be performed, nor the facilities existing for the labor required give the slightest reason, nor is it made even vaguely apparent by the most expert use of amphibology, a great practice of the ancient Oracle of Delphi, and not seldom employed in modern times.

It cannot be assumed that because a county has more than a certain number of residents living within its limits, a condition therefore exists which required, or makes convenient, the jury-list-selecting-machinery provided for in the Act, while in a county having a less number of inhabitants no such convenient machinery is required for the more efficient and expeditious selection of juries.

To assert the affirmative of the proposition that the difference in population *ipso facto* creates the difference in

conditions which requires the convenience in one county but not in another of less population is to invoke the fallacy of assuming that one thing is the cause of another without any sufficient grounds. *"Post hoc ergo propter hoc"* describes the character of such fallacious conclusions. One may with as much logic assert that the greatness of England is due to the character of her people or that it will rain during the month following a new moon with a corner tipped toward the earth.

BROWN and BUFORD, J. J., concur.

BROWN, J. (dissenting).—In addition to the reasons advanced by Justices ELLIS and BUFORD, the Act here in question does not meet the tests laid down in Anderson v. Board of Public Instruction, 102 Fla. 695, 136 So. 334; State, *ex rel.* Buford, v. Shepard, 84 Fla. 206, 93 So. 667; Jordan v. State, *ex rel.,* 100 Fla. 494, 129 So. 747; Stripling v. Thomas, 101 Fla. 1015, 132 So. 824; State, *ex rel.,* v. O'Quinn, Clerk, 154 So. 166, and the Alabama Case of Vaughan v. State, 102 So. 222, 212 Ala. 258. It has been said by many courts that "the commonly accepted definition of a general law, as distinguished from a special or local law, is that it is a law that embraces a class of subjects or places, and does not omit any subject or place naturally belonging to such class." 25 R. C. L. 814.

Section 20 of Art. III of our Constitution recognizes the fact that there should not be any local or special laws regarding "summoning and empanelling grand and petit juries," and Section 21 of Art. III says that "In all cases enumerated in the preceding section all laws shall be general and of uniform operation throughout the State." The selection of the persons who shall serve as jurors and the filling of the jury box are so closely related to the summoning and empanelling of juries as to fall within the

same principle. The selection necessarily must be based upon qualifications that shall be the same in every county. It is admitted that there could be no valid or special law which would make it possible to have different qualifications for jurors in the different counties of the State, based upon classification by population, area, or any other similar classification. The selection of the jury list must of course be made from among those citizens of the county who are by general law possessed of the qualifications prescribed by such law. It would seem, therefore, that the *method* of selection should also be general and not local, in order to fulfill the complete intent of the Constitution. This is indicated by the fact that some fifteen years ago, when the then Governor called a conference of the circuit judges to recommend needed changes in our laws and procedure, they recommended the adoption of a law, similar to the one here in question, providing in substance that the Governor should appoint three Jury Commissioners in each county in the State, such commissioners to hold no other public office, and who should perform the duties with regard to the selection of names and the filling of the jury box which had hitherto been imposed upon the county commissioners. This recommendation of the Judges was embraced in the Governor's message to the Legislature. One of our neighboring States has had such a general law for many years.

By conceding that the present Act would constitute a constitutionally sufficient classification if based upon the need relieving the overburdened county commissioners in the larger counties of the State of a duty which they have not the time to properly perform, the classification on this basis, as made by this Act, would still be defective and arbitrary because the effect of it would be to omit Dade and Hillsborough counties from its operation, as it is a matter.

of common knowledge that Duval, Dade and Hillsborough counties, the three largest counties in the State, have populations so nearly the same as to make such omission arbitrary; there being no substantial difference in population. It would overtax our ingenuity to conceive of any good reason why, if a jury commission should be needed, for reasons stated, in Duval County, it would not also be needed in Hillsborough and Dade Counties for the same reasons. If we are to uphold the classification as being conceivably based upon two classes of counties, the larger and the smaller counties of the State, then the inclusion of Duval and the exclusion of Hillsborough and Dade Counties is arbitrary and unreasonable, even on such a basis of classification. The reasoning of Mr. Justice ELLIS in his opinion in this case becomes very cogent at this point.

The Supreme Court of Alabama, which has constitutional provisions in this connection substantially the same as our own, had this to say in Reynolds v. Collier, 204 Ala. 38, 85 So. 465;

"The effect of all of our decisions, in short, has been that, *where there is a substantial difference in population,* and the classification is made in good faith, reasonably related to the purpose to be effected and 'to the difference in population which forms the basis thereof, and not merely arbitrary, it is a general law, although at the time it may be applicable to only one political subdivision of the State; but that if the classification bears no reasonable relation to the difference in population, upon which it rests, in view of the purpose to be effected by such legislation, and clearly shows it was merely fixed arbitrarily, guised as a general law, and in fact, is a local law, it is then in plain violation of the Constitution and cannot be upheld." (Italics supplied.)

The principles of constitutional construction governing this subject, as recognized in this jurisdiction, were admirably stated by Mr. Chief Justice DAVIS in Anderson v. Board of Public Instruction, *supra,* as follows:

"Undoubtedly, within reasonable limits, the Legislature may classify counties for governmental purposes according to population for the purpose of enactment of general laws and where a proper and reasonable classification is made according to population or otherwise, such Act will nevertheless be regarded as a general law and not as a special or local law, even though the result is an Act whose operation is confined to a single county falling between two specified populations. But in every such case the classification adopted must be reasonable and not arbitrary, State v. Daniel, 87 Fla. 270, 99 So. 804; Smith v. State, 88 Fla. 151, 101 So. 350. The provisions of the Constitution requiring publication of notice of intention to have local or special laws introduced and passed are not to be disregarded or frittered away by upholding Acts which on their face are considered annd dealt with and passed by the Legislature as special or local laws although disguised as general Acts and attempted to be justified upon a classification which is obviously unreasonable, unjustified and arbitrary.

"Classification in law, as in other departments of knowledge or practice, is the grouping of things in speculation or practice because they agree with one another or in certain particulars, and differ from other things in those same particulars. Billings v. Illinois, 188 U. S. 97, 23 Sup. Ct. Rep. 272, 47 L. Ed. 400. The State Legislature necessarily has a wide discretion about resorting to classification when establishing regulations for the welfare of those for whom it legislates or in prescribing functions of its political subdivisions for the effective operation of the government, and

the deference due to the judgment of the Legislature, in a matter of statutory classification will be observed when this court cannot say on its judicial knowledge that the Legislature could not have had any such reasonable ground for believing that there were such public considerations as to justify the particular classification and distinction made. Dominion Hotel v. Arizona, 249 U. S. 265, Sup. Ct. Rep. 273, 63 L. Ed. 597.

"But when a classification is made, the question always is whether there is any reasonable ground for it, or whether it is only and simply arbitrary based upon no real distinction and entirely unnatural. Classifications must always rest upon some difference which bears a reasonable and just relation to the Act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. Connelly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. Rep. 431, 46 L. Ed. 679; Goldstein v. Maloney, 62 Fla. 198, 57 So. 342; State v. A. C. L. R. R. Co., 60 Fla. 465, 54 So. 394."

. Applying these principles to the statute here under review, it appears that the constitutionality of the Act cannot be upheld as a general law. Neither can it be upheld as a local law (even if local laws on this subject are permissible under Section 20 of Art. III), because no notice of its proposed introduction was published annd established as required by Section 21 of Article III of the Constitution.

## On Rehearing.

Per Curiam.—A rehearing was granted in this case and a reargument has been had before the Court *en banc*.

There being no concurrence of a majority of the Supreme Court in any opinion and judgment that Chapter 16058, Acts of 1933, relating to and creating a Jury Commission in

all counties of the State having a population of 155,000 by the last preceding Federal Census is, or would be, unconstitutional for any of the causes alleged against its validity in this proceeding in quo warranto, the judgment of this Court must be, and is, that the State's demurrer to the return of the respondents be and the same is hereby overruled and that final judgment consequent on such demurrer be and the same is hereby directed to be entered in favor of said respondents to the effect that they have not unlawfully usurped, nor continued to unlawfully usurp, the office of Jury Commissioner of Duval County, Florida, as charged in the State's information in quo warranto, and that the writ of quo warranto issued herein be and the same is hereby dismissed and the judgment of ouster prayed for against the respondents denied.

Where a party institutes an original proceeding in the Supreme Court alleging as a basis for judgment in his favor therein, that a duly enacted statute is unconstitutional, and his case is heard and argued before six justices sitting *en banc*, the concurrence of a majority of the members of the Supreme Court in holding the challenged statute to be unconstitutional is necessary to any judgment adjudicating the statute to be invalid for the causes assigned, or to grant specific relief predicated on any such holding.

Therefore in a case like this one which is in quo warranto, where the members of the Supreme Court sitting *en banc,* and after full hearing and argument in the premises, cannot agree by a majority opinion of their members to a judgment holding a challenged statute brought into controversy therein, to be unconstitutional, the statute must be judicially recognized and upheld as valid for the time being, and judgment entered in favor of the respondents, without prejudice, however, to a future reconsideration and

determination of the constitutional question involved should there be a change in the personnel of the Supreme Court— the statute and acts done pursuant to it in the meantime being unaffected in their validity by reason of the failure of the highest Court of the State to affirmatively adjudicate the challenged Act to be unconstitutional.

Judgment for respondents on demurrer overruled to information in quo warranto.

WHITFIELD, C. J., and TERRELL, BROWN, BUFORD, and DAVIS, J. J., concur.