969 So.2d 553 (2007)
Greg BROWN, Appellant,
v.
STATE of Florida, COMMISSION ON ETHICS, Robert Burgess, and Hilton Kelly, Appellees.
Nos. 1D06-6070, 1D06-6071.
District Court of Appeal of Florida, First District.
November 30, 2007.
*554 Albert T. Gimbel and Mark Herron of Messer, Caparello & Self, Tallahassee; E. Gary Early, Tallahassee, for Appellant.
Philip Claypool, General Counsel, Julia Cobb Costas, Staff Attorney, and Daniel A. Carlton, Jr., Staff Attorney, Tallahassee, for Appellee Commission on Ethics; Joseph L. Hammons of Hammons Longoria & Whittaker, Pensacola, for Appellees Robert Burgess and Hilton Kelly.
PADOVANO, J.
This is an appeal by a public official from a final order denying costs and attorney fees under section 112.317(8) Florida Statutes (2004).[1] We conclude that this statute does not require a public official *555 who was falsely accused of an ethics violation to prove that the accusation was made with "actual malice." Based on the requirements stated in the text of the statute, the appellant was entitled to recover costs and attorney fees. For these reasons, we reverse.
The appellant Greg Brown is the property appraiser for Santa Rosa County. He took office in January 2001, having succeeded Robert Burgess, who had retired from the position at the end of the preceding term of office. Brown sought re-election in 2004 and was opposed by Leon Cooper, a man who had previously worked in the property appraiser's office under Burgess.
The controversy in this case began with the filing of two ethics complaints against Brown by his political opponents. Both complaints were submitted to the Florida Commission on Ethics on April 12, 2004, the day that Cooper qualified to run against Brown, and both were eventually dismissed for lack of probable cause.
Robert Burgess filed one of the complaints. The essence of the claim was that Brown had acted improperly in reinstating a religious exemption for a church. The exemption had been denied several years earlier during Burgess' term in office, on the ground that the property was not being used for religious purposes. Burgess alleged that Brown reinstated the exemption to obtain the political support of the owners of the church and on that assumption, he accused Brown of committing a "corrupt" act. However, he came to this grave conclusion about Brown's conduct without checking into the facts. Had he investigated the matter, he would have learned that the exemption was reinstated because it had been removed without proper notice. Public records available in the tax collector's office explained that the exemption had been removed in error. Burgess apparently did not examine these records or else he would have known that he was actually complaining about the correction of his own mistake.
The other complaint was filed by Hilton Kelly, who was apparently acting on behalf of his sister, a realtor in Santa Rosa County and a prominent supporter of the Cooper campaign. Kelly alleged that Brown had deliberately undervalued the property of a Santa Rosa County resident in exchange for a campaign contribution. He included factual details that appeared to support this assertion. For example, he alleged that Brown had instructed his appraisers to stay away from the property in furtherance of a scheme to ensure that it would remain undervalued.
Kelly conceded that he had filed the complaint at his sister's suggestion and explained that he did not "have a dog in this hunt." Although the allegations were made under oath, Kelly admitted that he had not investigated the facts. The reason for the reduction in the assessed value would have been apparent with very little inquiry. The house situated on the property had burned to the ground. Once the house was destroyed, the property was worth much less and Brown had no alternative but to reduce the assessment.
The Florida Commission on Ethics dismissed the complaints, and Brown subsequently made a claim for costs and attorney fees under section 112.317(8). This statute provides that a person who files an ethics complaint against a public official is liable for costs and fees if the complaint was made with a malicious intent to injure the reputation of the public official, in that the facts alleged in the complaint were known to be false or made with reckless disregard for the truth. Brown alleged that the ethics complaints filed by Burgess and Kelly fell within the requirements of the statute and he sought to recover the *556 expenses he had incurred in his successful defense before the Ethics Commission.
Brown's claim for costs and attorney fees was presented on written evidence to Administrative Law Judge, Steven Dean. Judge Dean found as a matter of fact that "[b]oth complaints were motivated by the desire to impugn Brown's character and . . . to injure [his] reputation." He found that Burgess had not examined the public records to ascertain the reason for reinstating the religious exemption, that Burgess lacked a factual predicate to assert that Brown had acted corruptly, and that it was "clear from the timing that Burgess' motivation was to impugn Brown's reputation." Likewise, he found that Kelly had "made no independent effort to verify any of the facts in his ethics complaint" and that he had "recklessly disregarded whether the complaint contained false allegations."
Based on these findings, Judge Dean concluded in his recommended orders that Brown was entitled to an award of costs and attorney fees under section 112.317(8). He determined that Brown was entitled to recover $5,366.56 in costs and $17,079.50 in attorney fees in the case initiated by Robert Burgess, and that he was entitled to $4,603.29 in costs and $13,016.50 in attorney fees in the Hilton Kelly case.
In the course of the final hearing, many of the commissioners expressed the view that the complaints by Burgess and Kelly were among the most egregious examples of misuse of an ethics complaint to harm a political opponent. They described the complaints as "blatantly political" and "shameful." Nevertheless, the Commission denied Brown's request for costs and attorney fees.
This decision was based on a concern that the findings of fact in Judge Dean's order were insufficient. The Commission construed the language of section 112.317(8) to require a finding of "actual malice," as defined by the United States Supreme Court in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Because the findings in Judge Dean's order would not, in the Commission's view, support a conclusion that the complainants entertained serious doubts about the truth of their allegations, as required by the Sullivan standard, the Commission remanded the case to Judge Dean for additional findings.
In the interim, Judge Dean retired. Administrative Law Judge Lisa Shearer Nelson was assigned in his place. Using the same written evidence, Judge Nelson concluded that the evidence against Burgess and Kelly did not meet the actual malice test in Sullivan. For that reason, Judge Nelson entered amended recommended orders, in which she concluded that Brown's motion for costs and fees should be denied. The Commission adopted Judge Nelson's recommendations and Brown then appealed to this court.
The standard of review of an agency decision on a point of law is set out in the Florida Administrative Procedure Act. Section 120.68(7)(d), Florida Statutes (2006) states that an appellate court may set aside a final administrative order if the agency "has erroneously interpreted a provision of law and a correct interpretation compels a particular action." See Fla. Hosp. v. Agency for Health Care Admin., 823 So.2d 844 (Fla. 1st DCA 2002); Parlato v. Secret Oaks Owners Ass'n, 793 So.2d 1158 (Fla. 1st DCA 2001). This statute incorporates the de novo standard of review, which applies generally to issues of law. By the terms of the statute, the appellate court need only determine that the agency made a legal error and that the error was one that affected the outcome of the case.
*557 A more specific principle in the case law requires the appellate courts to show greater deference to an administrative agency if the agency has interpreted a statute within its jurisdiction. In such a case, the interpretation may have been based on a history that is best known by the agency or special expertise the agency has in applying the statute. To account for these factors, the courts have held that an agency decision construing a statute within its substantive jurisdiction should not be reversed unless it is clearly erroneous. See Pan Am. World Airways, Inc. v. Fla. Pub. Serv. Comm'n, 427 So.2d 716 (Fla.1983); Arza v. Fla. Elections Comm'n, 907 So.2d 604 (Fla. 3d DCA 2005).
Deference is not required under this rule, however, if the statute the agency has interpreted is an attorney fee statute. See G.E.L. Corp. v. Dep't of Envt'l Protection, 875 So.2d 1257 (Fla. 5th DCA 2004). An appellate court is free to reject an agency's interpretation of an attorney fee statute even if the statute is one that applies exclusively to that agency. See Doyle v. Dep't of Bus. Reg., 794 So.2d 686 (Fla. 1st DCA 2001). Whether a party is entitled to an award of attorney fees is a question that arises in many different kinds of cases, regardless of the subject matter, and it is one that the courts are best equipped to answer.
This case illustrates the reason for excluding attorney fee statutes from the customary practice of deferring to an agency. Here, the interpretation of the statute did not require the use of the agency's expertise in evaluating the ethical conduct of public officials. To the contrary, it required nothing more than the application of the principles of statutory construction. The fact that the Commission reached its decision in part by importing a principle from the law of defamation is further evidence that it was not operating within its area of expertise.
Given the nature of the adjudication in this case and the subject matter of the statute, we conclude that the final order is reviewable by the de novo standard, as expressed in section 120.68(7)(d). Because the order is based on a conclusion of law that did not require any particular expertise, we need not defer to the Commission.
Brown contends that the phrase, "reckless disregard for the truth," in section 112.317(8) should be interpreted by its plain meaning. If that is correct, Brown will prevail on appeal. There is no doubt that Burgess and Kelly acted "recklessly," as we would ordinarily use that term. They charged Brown with public corruption without any investigation of the facts. Although they submitted their complaints under oath, they had no legitimate reason to believe that the accusations they made against Brown were true.
In contrast, Burgess and Kelly contend that the phrase, "reckless disregard for the truth," is used in the statute as a term of art to mean something much more. Because this phrase mirrors the language in the opinion in New York Times Co. v. Sullivan, they argue, it must refer to the actual malice standard adopted by the Court in that case. The term, "actual malice," is used in Sullivan not to refer in its ordinary sense to feelings of ill will about the person who was the subject of the statement, but rather to signify the likelihood that the speaker knew the statement was false.
As the Court has since explained, the statement must be one that was made with "a high degree of awareness of [its] probable falsity." Garrison v. Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). To meet this standard, the plaintiff must prove by clear and convincing *558 evidence that the "defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). If the Florida Legislature meant to incorporate these concepts into section 112.317(8), Burgess and Kelly will prevail on appeal. On this record, we could not say that they acted with "actual malice," as that phrase is used in Sullivan.
To resolve the controversy, we first consider the text of the statute. Section 112.317(8) states in full:
In any case in which the commission determines that a person has filed a complaint against a public officer or employee with a malicious intent to injure the reputation of such officer or employee by filing the complaint with knowledge that the complaint contains one or more false allegations or with reckless disregard for whether the complaint contains false allegations of fact material to a violation of this part, the complainant shall be liable for costs plus reasonable attorney's fees incurred in the defense of the person complained against, including the costs and reasonable attorney's fees incurred in proving entitlement to and the amount of cost and fees. If the complainant fails to pay such costs and fees voluntarily within 30 days following such finding by the commission, the commission shall forward such information to the Department of Legal Affairs, which shall bring a civil action in a court of competent jurisdiction to recover the amount of such costs and fees awarded by the commission.
§ 112.317(8), Fla. Stat. (2004) (emphasis added). The underscored language is the same as that used in the Sullivan case, but that is the only point that supports the argument by Burgess and Kelly. There are many other points supporting Brown's argument.
It is significant, in our view, that the term, "actual malice," does not appear in the text of the statute. The Legislature has shown that it understands the precise meaning of this term by using it in the proper context in section 104.271(2) Florida Statutes. This statute authorizes the imposition of a penalty against a political candidate who with "actual malice" makes a false statement against an opposing candidate. The Legislature plainly understood when it enacted section 104.271(2) that a statute regulating pure speech or expression would require proof of actual malice to meet First Amendment standards. By contrast, the absence of this well known phrase in section 112.317(8) is an indication that the Legislature did not intend to engraft the Sullivan standard into the statutory requirements for recovery of costs and attorney fees.
Another indication leading to the same conclusion is that section 112.317(8) does not explicitly require evidence of a high awareness of probable falsity, or proof that the complainant in fact entertained serious doubts as to the truth of the allegations in the complaint. These findings would be required if the Legislature meant to incorporate the Sullivan actual malice standard.
It is also significant that the statute does not address the evidentiary standard that applies to a claim for costs and attorney fees. A public official who files a civil action for defamation must prove actual malice by clear and convincing evidence, yet there is nothing in section 112.317(8) to suggest that the Commission should also apply this high burden of proof to a claim for costs and fees. That the Legislature is presumed to have known about this standard of proof and did not include it here is yet another indication that it did not mean to require a showing of actual malice.
*559 If we were to accept the argument made by Burgess and Kelly, we would be forced to read into the statute language that is not there. We would have to assume that the phrase, "malicious intent to injure the reputation of [the] officer," does not refer to the motive or intent of the complainant, but rather that it was used in a more abstract way to describe the legal concept of actual malice. We would also have to assume that the phrase, "reckless disregard for the truth," does not refer to a conscious indifference to the truth, as it would ordinarily, but that it was meant to convey an entirely different meaning: that the complainant in fact had serious doubts about the truth of the accusation.
Florida courts interpret statutes according to their plain meaning. There are certain accepted principles of statutory construction that can be applied if a statute is ambiguous, but the courts have no reason to speculate as to the meaning of a statute if it is clear on its face. Section 112.317(8) is not confusing or ambiguous. It lays out in plain English the requirements for recovering costs and attorney fees. It is not for us to add to these requirements by reading unstated terms into the statute.
We reject the argument that section 112.317(8) incorporates the actual malice standard in Sullivan based on the text of the statute alone. But the argument is one that must fail for yet another good reason. The justification for applying such a high standard in a defamation action by a public officialto protect the right to freedom of expressiondoes not exist in a defensive context such as this. Brown did not sue anyone. He merely sought to recover costs and attorney fees in an action brought against him by Burgess and Kelly.
The distinction is best illustrated by a brief review of the facts of the Sullivan case. A public official in Alabama sued the New York Times Company and a group of African-American civil rights leaders, claiming that they had published a false and defamatory editorial about his conduct toward civil rights activists. Many of the statements made in the editorial were false. The official was not named in the editorial and he could not prove that he was actually harmed by it. Nevertheless, in 1960 an Alabama court awarded him a judgment in the amount of $500,000. This judgment was made possible primarily because Alabama had a law that created a presumption that a false statement was made with malice.
The United States Supreme Court granted review in Sullivan to answer the question "whether this rule of liability, as applied to an action brought by a public official against critics of his official conduct, abridges the freedom of speech and of the press that is guaranteed by the First and Fourteenth Amendments." Sullivan, 376 U.S. at 268, 84 S.Ct. 710. The Court observed that it was considering this issue against "the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." Id. at 270, 84 S.Ct. 710. Following a detailed exposition of the need to protect the right to freedom of expression, the Court concluded that the Alabama law presuming malice was deficient and it held instead that a public official must show actual malice.
These concerns do not exist here. Burgess and Kelly were not merely critics of Brown's official conduct. They initiated legal proceedings against him and swore under oath in those proceedings that he committed acts of public corruption. In *560 Sullivan, the First Amendment was used as a shield to protect speakers and writers against complaints that might have the effect of discouraging public discourse, but here the complainants wish to use it as a sword to justify baseless litigation.
Had Burgess and Kelly made these same false accusations in a press conference, on the internet or in a campaign flyer, the situation would have been different. Brown could have responded with his own statements or he could have ignored the accusations. However, Burgess and Kelly did not give him either of those options. When they filed their ethics complaints against him, they drew him into the legal system involuntarily, and he had no choice but to defend himself. He was not seeking damages or a penalty; he was merely trying to recover the costs and expenses he incurred in defending himself.
The distinction is critical. The First Amendment guarantees the right to freedom of expression, but it would be a far cry to extrapolate from this proposition that the First Amendment also guarantees a right to initiate a legal proceeding based on false allegations. If that were the case, the "actual malice" standard would shield a claim of malicious prosecution in the same way that it shields a defamation claim. Yet that is not the case. Florida courts have held the plaintiff in a malicious prosecution case need not prove actual malice. See Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352 (Fla.1994); Clemons v. State Risk Mgmt. Trust Fund, 870 So.2d 881 (Fla. 1st DCA 2004).[2] As the courts have recognized, these are very different issues. A person who files a lawsuit based on a false allegation is not entitled to the same protection that is afforded to a person who merely publishes false information.
That proof of actual malice is not required to recover attorney's fees under section 112.317(8) will not discourage citizens from filing ethics complaints against a public officials. The statute sets a very high bar for the recovery of fees, even without the extraordinary protection that is afforded to freedom of expression. We have stated our view that the actual malice standard is not necessary as a matter of constitutional law, but the Florida Legislature is certainly free to incorporate this standard in the statute if it wishes.
For these reasons, we conclude that the phrase, "reckless disregard for the truth," in section 112.317(8) was not used as a shorthand reference to the exacting requirements in New York Times Co. v. Sullivan. Instead, we construe the statute by its plain meaning. Based on the text of the statute, the elements of a claim by a public official for costs and attorney fees are that (1) the complaint was made with a malicious intent to injure the official's reputation; (2) the person filing the complaint knew that the statements made about the official were false or made the statements about the official with reckless disregard for the truth; and (3) the statements were material.
Because the evidence supports all of these elements, Brown is entitled to an award of costs and attorney fees against Burgess and Kelly. Accordingly, we reverse the final order on appeal and remand this case with instructions to enter a final order awarding costs and fees. No additional evidence is required or permitted. *561 The Commission need only enter a final order adopting Judge Dean's original recommendations.
Reversed and remanded.
ROBERTS, J., concurs.
WOLF, J., concurs with opinion.
WOLF, J., Concurring.
I concur fully in the majority's determination that the text of section 112.317(8), Florida Statutes, does not incorporate the actual malice standard. I also concur to the extent the majority determines that adoption of the actual malice standard is not constitutionally mandated.[3] I feel it is unnecessary, however, to weigh the importance of the right to freedom of expression as addressed in New York Times Co. v. Sullivan against the right to bring complaints to an independent commission concerning breaches of the public trust by public officials.
The Commission on Ethics, in its motion for rehearing, makes a number of policy arguments for the adoption of the "actual malice" standard of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). I feel that these policy arguments should be made to the Legislature. The majority opinion suggests that the freedom of expression protected in New York Times Co. v. Sullivan is entitled to greater protections than the freedom to file ethical complaints regarding public officials. In my view, this is also a policy decision for the Legislature.
The importance of an independent investigation of misuse of office cannot be debated. The people expressed their recognition of this importance within the constitution. Article II, section 8(f) of the Florida Constitution requires the creation of an independent commission to investigate breaches of the public trust by public officers or employees. The Commission on Ethics fulfills this important responsibility. See § 112.320, Fla. Stat. (2006); Comm'n on Ethics v. Sullivan, 489 So.2d 10 (Fla.1986). Thus, complaints to the Commission are the method of implementing the people's mandate of ethics in government.[4] Judicial debate over the relative importance of this right serves no useful purpose.
The majority attempts to illustrate the greater importance of freedom of expression by comparing the facts in New York Times v. Sullivan and the facts in this case. Individual illustrations add little to the exercise of weighing these two important constitutional rights. The critical determination is not the facts related to these two particular instances; it is the general question of whether the right to criticize a public figure in writing is more important than the right to initiate investigations of public office holders who may be involved in breaching the public trust. The people of the State of Florida have indicated both rights are important. It is totally within the prerogative of the Legislature to determine if they wish to give complainants to the Commission on Ethics as much protection as provided in Sullivan.[5] I, therefore, would not engage in a *562 discussion of the relative importance of these rights.
NOTES
[1] The statute was subsequently renumbered. It is now section 112.317(7).
[2] We recognize that section 112.317(8) involves policy considerations that are not present in other forms of civil litigation. The comparison to malicious prosecution suits is made here only to illustrate that the actual malice standard protects a person who has made a false statement about another. It does not protect a person who takes formal legal action against another based on a false accusation.
[3] The reckless allegation of the appellees in this case are a perfect example of why the Legislature may wish not to adopt such a standard.
[4] This is especially true because the Commission cannot initiate investigations on its own but may only act upon initiation of an individual complaint. See § 112.322, Fla. Stat. (2006).
[5] I would note that any protection from liability under either of these processes allows for misuse or abuse of the process. It is up to the Legislature to weigh this factor.