SCALES, J.
Delong appeals a final order of the Florida Public Employees Relations Commission (“PERC”) dismissing the appeal of his termination for lack of jurisdiction. We affirm.
I. FACTS
Delong was hired as a sworn law enforcement officer by Florida’s Department of Environmental Protection (“DEP”) in 2007.
In 2012, the Florida Legislature enacted House Bill 1383 which, among other things, consolidated the DEP’s Division of Law Enforcement with the Division of Law Enforcement of The Florida Fish & Wildlife Conservation Committee (“FWC”).
The relevant portion of House Bill 1383, related to the transfer of DEP law enforcement personnel to the FWC, reads as follows: “... employees who are transferred from the Department of Environmental Protection ... to fill positions transferred to the Fish and Wildlife Conservation Commission shall retain and transfer any accrued annual leave, sick leave, and regular and special compensatory leave balances.” Fla. HB 1383, § 5 (2012).
*124 The effective date of House Bill 1388 was July 1, 2012; hence, on July 1, 2012, Delong was transferred from the Law Enforcement Division of the DEP to the Law Enforcement Division of FWC.
Later that month, on July 30, 2012, De-long was involved in a motor vehicle crash at John Pennekamp Coral Reef State Park. After the accident, detectives from the Monroe County Sheriffs Office issued Delong a criminal citation for leaving the scene of an accident involving property damage.
On March 26, 2013, FWC delivered notice to Delong that FWC would be terminating Delong’s employment with FWC, with such termination effective April 15, 2013.[1] On May 2, 2013, FWC confirmed its dismissal of Delong with a hand-delivered letter outlining the basis for the dismissal.
FWC’s May 2, 2013, dismissal notice indicated that Delong had been on “probationary status” in Florida’s career service system, and therefore Delong had no right to appeal his termination to PERC.[2]
Notwithstanding FWC’s assertion that Delong had no PERC appeal rights, De-long appealed his dismissal to PERC.
On May 31, 2013, FWC filed a motion to dismiss Delong’s appeal alleging that PERC lacked jurisdiction to hear Delong’s appeal of his termination. Specifically, FWC asserted that Delong became a “new employee” of FWC on July 1, 2012 (i.e., the effective date of the transfer outlined in House Bill 1383), and, pursuant to sections 110.213 and 110.217, Florida Statutes, Delong was required to complete at least one year of probationary employment with FWC in order for PERC to have jurisdiction to hear Delong’s appeal.
FWC relied upon' Rule 60L-33.003(2)(d), F.A.C.[3] which, prior to being amended in January 2014, read, in pertinent part, as follows:
(d) Probationary or Permanent Status— An employee shall be given probationary status or permanent status in accordance with the following.
I. Upon original appointment, promotion or demotion to a different broadband level, or any time an employee moves between agencies, an employee shall be given probationary status unless ... the legislature has designated that an employee shall be moved but shall not have status as a new employee.
On July 19, 2013, after conducting an evi-dentiary hearing, a PERC hearing officer issued a recommended order concluding that PERC lacked statutory authority to hear appeals from probationary employees challenging their dismissal.
On August 13, 2013, PERC issued its final order adopting the hearing officer’s recommended order. This appeal timely ensued.
II. ANALYSIS
The issue before the court is whether PERC had jurisdiction to hear Delong’s appeal of his dismissal from FWC. Specif *125 ically, the court must decide whether PERC’s determination that Delong was a probationary employee — rather than a permanent status employee — was clearly erroneous.[4]
PERC has jurisdiction to review appeals of permanent status employees in Florida’s career service system who challenge their dismissal from employment. §§ 110.227(5)(a); 447.207(8), Fla. Stat (2012).
An employee who has not attained permanent status serves at the pleasure of the agency head, and that employee may be dismissed at the agency head’s discretion. § 110.217(2) Fla. Stat. An employee on probationary status attains permanent status upon successful completion of at least a one-year probationary period in his or her current position. § 110.217(2) Fla. Stat.
At oral argument, Delong conceded that PERC followed the dictates of the version of Rule 60L-33.003(d) then in effect.
Delong, however, argues that PERC’s application of this rule to his situation effectively deprives him of a vested property right, to wit: his status as a permanent employee, which was earned while Delong was employed by DEP. We disagree.
Florida’s Department of Management Services (“DMS”) is expressly directed by Section 110.217(1), Florida Statutes, to promulgate rules regarding the employment status of agency employees.[5] Pursuant to that authority, DMS promulgated the subject rule.
The rule provides uniform guidance to state agencies regarding the probationary/permanent status of employees who, by legislative action, are transferred from one department to another.
The rule states that unless the legislation effectuating the transfer designates that transferred employees shall not have “new employee” status, then all transferred employees shall have “new employee” status. Put another way, the rule requires that all employees who are transferred from one agency to another are considered probationary employees unless otherwise designated by the Legislature.[6]
*126 Delong was transferred from the DEP to the FWC on July 1, 2012, the effective date of HB 1881. Hence, irrespective of Delong’s prior status at the DEP, pursuant to the rule and HB1388, Delong became a “new employee” of FWC on July 1, 2012. While the language of HB1383 expressly transferred “any accrued annual leave, sick leave, and regular and special compensatory leave balances” of transferred employees, HB 1383 does not authorize transferred employees to retain their permanent status.
Since Delong was transferred from the DEP to the FWC on July 1, 2012, Delong plainly had not successfully completed one year at his position with FWC when he was dismissed from FWC in May 2013. Hence, PERC lacks jurisdiction to hear Delong’s appeal because Delong was a probationary FWC employee, not a permanent one. § 110.217(2) Fla. Stat.[7]
The dissent suggests that this Court should effectively nullify the subject rule, disregard Section 110.217(1), Florida Statutes, requiring DMS to promulgate uniform rules related to employment status, and essentially require state agencies to follow a court-imposed rule of statutory construction for transfer statutes, such as HB 1381. The dissent’s proffered rule of statutory construction would dictate that transferred employees retain their employment status, unless otherwise directed by the transfer legislation. Indeed, DMS has since amended Rule 60L-33.003 to incorporate that very concept. However, De-long has identified no authority which would require or allow the retroactive application of DMS’ amended rule to De-long’s case.
Additionally, the prior iteration of the rule was in effect in 2012 when the Legislature adopted HB 1383. We must presume that the Legislature was aware of DMS’ rule when it adopted HB 1383. Cf. Barnett v. Dep’t of Mgmt. Servs., 931 So.2d 121, 132 (Fla. 1st DCA 2006) (“A well-recognized maxim of statutory construction is that the legislature must be presumed to be aware, at the time it enacts new legislation, of the status of the law then existing, including pertinent judicial case law.”); accord Hollar v. Int’l Bankers Ins. Co., 572 So.2d 937, 939 (Fla. 3d DCA 1990).
If we were to apply DMS’ “new” rule to HB 1383, rather than the version of the rule in effect when the Legislature passed HB 1383, this Court would be grafting onto HB 1383 language regarding the probationary/permanent status of transferred employees that the Legislature itself, for whatever reasons, chose not to include in the legislation. Since the Legislature has expressly directed DMS to promulgate such policies via the rule-making process, we decline to effectively amend HB 1381 by altering the rule of construction in effect when HB 1381 became law.[8]
*127 Finally, we note the Legislature specifically included in HB 1383 language which allowed transferred employees to retain certain enumerated earned benefits such as annual leave, sick leave, and certain leave balances. Had the Legislature intended for transferred employees to also retain their employment status, one must presume that the Legislature would have similarly included such language. See Subirats v. Fid. Nat’l Prop., 106 So.3d 997, 1000 (Fla. 3d DCA 2013) (quoting Moonlit Waters Apartments, Inc. v. Cauley, 666 So.2d 898, 900 (Fla.1996) (“Under the principle of statutory construction, expressio unius est exclusio alterius, the mention of one thing implies the exclusion of another.”)). However, the Legislature chose not to make employees transferred by HB 1381 anything but probationary status employees.
Affirmed.
ROTHENBERG, J., concurs.

. While not relevant to this appeal, FWC alleged that Delong's conduct involving the July 30, 2012, motor vehicle crash violated certain standards applicable to career service employees.

. Pursuant to Section 110.227, Florida Statutes (2012), PERC has jurisdiction to hear appeals filed by permanent status career service employees.

.Rule 60L-33.003 was promulgated by Florida's Division of Management Services which, pursuant to Section 110.217(1), Florida Statutes, is directed to promulgate uniform administrative rules governing, inter alia, state agency employee employment status.

.While an agency’s interpretation of a statute generally is subject to de novo review by an appellate court, see § 120.68(7)(d), Fla. Stat. (2012); Brown v. State Comm'n on Ethics, 969 So.2d 553, 556 (Fla. 1st DCA 2007), an appellate court is required to give deference to an agency interpretation of a statute within the agency’s substantive jurisdiction, and will not reverse the agency unless the interpretation is clearly erroneous. See Brown, 969 So.2d at 557. Pursuant to Section 447.207(8), Florida Statutes, PERC is expressly designated to hear appeals of dismissals of any "permanent employee” in the State Career Service System "in the manner provided in Section 110.227.” Hence, Sections 4 and 5 of House Bill 1381 (i.e., the sections regarding the transfer to FWC of DEP’s law enforcement personnel), the statutes relating to PERC’s jurisdiction, and the rules promulgated by DMS by virtue of such statutes, are plainly within PERC's substantive jurisdiction; therefore we review the order on appeal — which necessarily involved PERC’s interpretation of these statutes and rules — using the "clearly erroneous” standard.

. Section 110.217(1) reads in its entirety as follows: “(1) The department shall develop uniform rules regarding original appointment, promotion, demotion, reassignment, lateral action, separation, and status that must be used by state agencies.” (emphasis added)

. This rule is consistent with the expression of legislative intent manifested in the plain language of Section 110.217(2), Florida Statutes, requiring employees to complete at least one year in their current position before attaining permanent status. We cannot conclude that the statutory construction of Section 110.217(2) manifested in the rule is clearly erroneous. The rule manifests a reasonable construction that an employee legislatively transferred from one agency to another has not remained in that employee's "current position” unless expressly designated in the legislation effectuating the transfer.

. It bears noting that PERC's final order dismissing Delong’s appeal for lack of jurisdiction is consistent with PERC’s final order in Tactuk v. FWC, 27 FCSR 206 (2012) (confirming that DEP law enforcement officers transferred to the FWC by virtue of HB1383 were placed on probationary status).

. The dissent argues both: (i) that this is a case requiring the determination of legislative intent, and (ii) that this court should apply to Delong's case the amended rule which is now in effect, rather than the version of rule applicable when the Legislature adopted HB 1381. When the 2012 Legislature adopted HB 1381, it knew precisely how HB 1381 would impact the employment status of transferred employees because the Legislature had the benefit of the version of the rule then in effect. It seems incongruous to suggest the intent of the 2012 Legislature was informed or influenced by a DMS administrative rule that would not be promulgated until January 2014, some two years after the 2012 Legislature's sine die.