*160 ON MOTIONS FOR REHEARING AND CLARIFICATION
PER CURIAM.
Appellants and Appellee Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering, have filed motions for clarification of our January 24, 2013, opinion. Appellee West Volusia Racing, Inc., has filed a motion for rehearing. We deny the motion for rehearing. In consideration of the motions for clarification, we withdraw our previous opinion and substitute the following in its place. We grant clarification to the extent reflected in this corrected opinion.
This appeal arises from a final order entered after a summary judgment declaring chapter 2009-170, section 6, Laws of Florida, (“the Act”) a valid general law. In pertinent part, the Act allows the holder of a pari-mutuel permit to change the class of the permit from jai-alai to greyhound if the permit or permitholder meets three enumerated criteria. In the proceedings below, Debary Real Estate Holdings, LLC, and Steven Costa, Appellants, sought a declaratory judgment that the Act is a special law enacted in violation of the notice or referendum requirement of article III, section 10, of the Florida Constitution. Upon a motion for summary judgment by Appellee License Acquisitions, LLC, an intervenor, the trial court reached the opposite conclusion. Because the Act is a special law unconstitutionally enacted in the guise of a general law, as shown through undisputed evidence in the record, we conclude that the trial court should have granted an earlier motion for summary judgment by Appellants.
I.FACTS
The Act added the following text to section 550.054, Florida Statutes, effective July 1, 2010:
(14)(a) Any holder of a permit to conduct jai alai may apply to the division to convert such permit to a permit to conduct greyhound racing in lieu of jai alai if:
1. Such permit is located in a county in which the division has issued only two pari-mutuel permits pursuant to this section;
2. Such permit was not previously converted from any other class of permit; and
3. The holder of the permit has not conducted jai alai games during a period of 10 years immediately preceding his or her application for conversion under this subsection.
(b) The division, upon application from the holder of a jai alai permit meeting all conditions of this section, shall convert the permit and shall issue to the permitholder a permit to conduct greyhound racing. A permitholder of a permit converted under this section shall be required to apply for and conduct a full schedule of live racing each fiscal year to be eligible for any tax credit provided by this chapter. The holder of a permit converted pursuant to this subsection or any holder of a permit to conduct greyhound racing located in a county in which it is the only permit issued pursuant to this section who operates at a leased facility pursuant to s. 550.475 may move the location for which the permit has been issued to another location within a 30-mile radius of the location fixed in the permit issued in that county, provided the move does not cross the county boundary and such location is approved under the zoning regulations of the county or municipality in which the permit is located, and upon such relocation may use the permit for the conduct of pari-mutuel wagering and the operation of a cardroom. The provi *161 sions of s. 550.6305(9)(d) and (f) shall apply to any permit converted under this subsection and shall continue to apply to any permit which was previously included under and subject to such provisions before a conversion pursuant to this section occurred.
Ch. 2009-170, § 6 at 1777-78, Laws of Fla.
Appellees West Volusia Racing, Inc., and License Acquisitions applied for the conversion of their jai-alai permits under section 550.054(14)(a) on the day the Act became effective. Approximately three weeks later, Appellee Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering (the “Division”), granted the applications. Shortly thereafter, Appellant Debary instituted this declaratory judgment action. Appellant Cos-ta later joined the suit as an additional plaintiff. Appellants contended below, and now argue on appeal, that the Act is a special law because the criterion specified in section 550.054(14)(a)l permanently closes the class of permits eligible for conversion. This criterion provides that a permit is not eligible unless it is “located in a county in which the division has issued only two pari-mutuel permits pursuant to [section 550.054].” § 550.054(14)(a)l. According to Appellants, at the time the Act was passed, precisely two permits met this criterion, and no reasonable possibility exists that any other permits will ever qualify for conversion absent a change in the law. Seeking summary judgment, Debary and Costa supported this contention with the deposition testimony of Jim Barnes, whose position with the Division requires him to process the applications for permit conversion under section 550.054(14)(a).
Barnes opined that a permit cannot qualify for conversion under section 550.054(14)(a) unless it is located in a county that has exactly two permits issued under section 550.054 (no more and no fewer). He also provided the following factual information, which is undisputed. Jai-alai permits, including those recently converted under the Act, exist in nine Florida counties: Broward, Gadsden, Hamilton, Hillsborough, Marion, Miami-Dade, Palm Beach, St. Lucie, and Volusia. Of these counties, only Marion, Palm Beach, and Volusia have precisely two permits that have been issued under section 550.054. Three counties have only one such permit, and the remaining counties have more than two. The three counties with one section 550.054 permit, which is a jai-alai permit, are Gadsden, Hamilton, and St. Lucie. The one permit located in Gadsden County has been previously converted from a jai-alai to greyhound and then back to jai-alai.
According to Barnes, of the nine counties with jai-alai permits, only Volusia and Palm Beach meet the qualification criteria. He explained that Marion County does not qualify for conversion because there is no greyhound permit in the county with which the jai-alai permit could pair. This opinion is apparently based on the assumption that no jai-alai permitholder would convert its permit under section 550.054(14)(a) unless the permitholder could enter into a leasing arrangement with another greyhound facility and take advantage of the card-room provision of section 550.054(14)(b). Barnes also confirmed, however, that Marion County’s jai-alai permit is active.
Barnes’ testimony indicates that the issuance of new section 550.054 permits in the counties with a jai-alai permit that is currently the only section 550.054 permit in the county would be legally impossible due to restrictions contained in section 550.054(2). This provision prohibits the issuance of a permit “to conduct horse-races, harness horse races, or dograces at a location within 100 miles of an existing pari-mutuel facility, or for jai alai within 50 *162 miles of an existing pari-mutuel facility.” § 550.054(2), Fla. Stat. (2010).
According to Barnes, only two locations exist in Florida where a new pari-mutuel facility can be located consistently with the mileage restriction of section 550.054(2). One such location is in an unspecified county in the Panhandle, and the other is in Dixie County. After acknowledging these locations, Barnes confirmed that a single new pari-mutuel facility in either location would not bring the county within the geographical requirements of section 550.054(14), because the county would need two section 550.054 permits to qualify and neither county has an existing facility. Ultimately, Barnes confirmed that no counties can come within the reach of section 550.054(14)(a)l, because of either the buffer requirement of section 550.054(2) or “other factors such as being the only permit in the county.”
License Acquisitions urged the trial court to read subsections (a) and (b) of section 550.054(14) together to determine if the law can be applied to others in the future. License Acquisitions opined that the purpose of the law is to allow the relocation of facilities and operation of card rooms as provided in subsection (b). License Acquisitions contended that the statute applies to greyhound permits first and that the conversion provision exists simply to open the relocation and card-room provision to facilities with dormant jai-alai permits. According to License Acquisitions, if the relocation and card-room provision may be applied to other permit-holders in the future, the entire act must be considered a general law. In addition to its primary argument urging the consideration of subsection (b), License Acquisitions theorized that the two-permit criterion of subsection (a)l could apply to counties other than Palm Beach and Volu-sia in the future. License Acquisitions explained that a permitholder in a county with more than two permits could bring itself within the reach of subsection (a)l by acquiring another permitholder.
The trial court denied Appellants’ motion for summary judgment. Thereafter, License Acquisitions moved for summary judgment, reasserting the arguments it raised previously concerning the openness of the class created by either subsection (a) or subsections (a) and (b) together. License Acquisitions provided evidence to support the proposition that several pairs of greyhound facilities could take advantage of subsection (b), either immediately or after moving the facilities no more than thirty miles.[1] The trial court agreed with License Acquisitions’ position that it had to construe both subsections together to determine whether the Act creates a closed class. Under this interpretation of Florida’s special-law jurisprudence, and in consideration of License Acquisitions’ evidence, the trial court granted summary judgment for Appellees and declared the Act valid.
II. ANALYSIS
Appellants challenge both summary-judgment rulings. The challenge to the ruling on Appellants’ motion for summary judgment, however, is dispositive. We review this ruling de novo, applying the standard that summary judgment must be granted if there is no genuine issue of material fact and the moving party is enti- *163 tied to judgment upon an application of the law to the undisputed facts. See Castleberry v. Edward M. Chadbourne, Inc., 810 So.2d 1028, 1029 (Fla. 1st DCA 2002). Our application of this standard to Appellants’ motion for summary judgment is based on the record as it existed at the time of the trial court’s ruling on that motion. See Tiger Point Golf & Country Club v. Hipple, 977 So.2d 608, 609-10 (Fla. 1st DCA 2007).
To determine whether the undisputed facts in Barnes’ deposition entitle Appellants to judgment as a matter of law, we will examine Florida’s special-law jurisprudence with particular attention to the parimutuel legislation context; decide whether subsection (b) should play a part in classifying the law as special or general; and then resolve disagreements between the parties concerning the proper interpretation of section 550.054(14)(a)1. After providing this legal background, we will apply the law to the facts elicited in Barnes’ testimony to decide whether those facts are sufficient to show conclusively that the Act is a special law.
A. Standards Governing the “Special Law Versus General Law” Inquiry
Article III, section 10, of the Florida Constitution forbids the Legislature to pass a special law without either providing advance notice of intent to enact the law or conditioning the law’s effectiveness upon a referendum of the electors of the areas affected. There is no dispute that the Legislature failed to follow this requirement in passing the Act. At issue is whether section 550.054(14) is actually a special law passed in the guise of a general law.
As the term is used in the Florida Constitution, a special law is “a special or local law.” Fla. Dep’t. of Business & Prof'l Regulation v. Gulfstream Park Racing Ass’n, Inc., 967 So.2d 802, 807 (Fla.2007) (“Gulfstream II”) (quoting Art. X, § 12(g), Fla. Const.). Case law defines “special law,” “local law,” and “general law” as follows:
[A] special law is one relating to, or designed to operate upon, particular persons or things, or one that purports to operate upon classified persons or things when classification is not permissible or the classification adopted is illegal; a local law is one relating to, or designed to operate only in, a specifically indicated part of the state, or one that purports to operate within classified territory when classification is not permissible or the classification adopted is illegal.
A general law operates universally throughout the state, or uniformly upon subjects as they may exist throughout the state, or uniformly within permissible classifications by population of counties or otherwise, or is a law relating to a state function or instrumentality.
Id. (quoting State ex rel. Landis v. Harris, 120 Fla. 555, 163 So. 237, 240 (1934)).
In Biscayne Kennel Club, Inc. v. Florida State Racing Commission, 165 So.2d 762, 763-64 (Fla.1964), the Florida Supreme Court identified two criteria that render a law general when it operates on the basis of a classification system. First, the class affected or regulated must be open, meaning that it must be potentially applicable to people or entities in the future. See Biscayne, 165 So.2d at 763-64; see also Ocala Breeders’ Sales Co., Inc. v. Fla. Gaming Ctrs., Inc., 731 So.2d 21, 25 (Fla. 1st DCA 1999) (“If it is possible in the future for others to meet the criteria set forth in the statute, then it is a general law and not a special law.”). Second, there must be “a rational distinction between those in the class and those outside it[] when the purpose of the legislation and the *164 subject of the regulation are considered.” Biscayne, 165 So.2d at 763-64. In a later case addressing challenges to pari-mutuel legislation under article III, section 10, the Florida Supreme Court essentially consolidated the two criteria for the purpose of such challenges, noting that a closed class in this context “indicates an arbitrary classification scheme.” Dep’t of Business Regulation v. Classic Mile, 541 So.2d 1155, 1158 n. 4 (Fla.1989). The court held that the dispositive fact in determining whether a reasonable relationship exists between a classification in pari-mutuel legislation and the subject matter covered is whether the class is potentially open. Id. at 1159.
The standard determining whether a class is open is “whether there is a reasonable possibility that the class will include others” in the future. Gulfstream II, 967 So.2d at 809. Under this standard, a statute is neither closed “merely because it is unlikely that it will include anyone else,” nor open “merely because there is a theoretical possibility that some day it might include someone else.” Id. (quoting State, Dep’t of Business & Prof'l Regulation v. Gulfstream Park Racing Ass’n, 912 So.2d 616, 622 (Fla. 1st DCA 2005)). Rather, the determination of whether a class is open “must be done by a realistic and reasonable assessment.” Id. As this language suggests, the determination of whether a law is special or general can involve questions of both law and fact. See id.
For this reason, the trial court in State, Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering v. Gulfstream Park Racing Association, Inc., 912 So.2d 616 (Fla. 1st DCA 2005) (“Gulfstream I”), took evidence to determine whether there was any reasonable possibility that a statute imposing restrictions on horse-racing permitholders within twenty-five miles of each other would ever be applied to other permithold-ers. The party opposing the law presented evidence that there were only three tracks in the state within twenty-five miles of one another. Id. at 619. The three tracks to which the law applied when enacted were able to exist in such proximity to one another because they opened for business before the Legislature imposed the 100-mile-buffer requirement now embodied in section 550.054(2). 912 So.2d at 621. By the time the law imposing restrictions on tracks within twenty-five miles of one another came into existence, the 100-mile requirement had already been enacted. Id. This factor minimized the likelihood that the law would be applied to other tracks in the future. Id. The party supporting the law, however, pointed out that one type of pari-mutuel facility, tracks for quarter-horse racing, is not subject to the 100-mile requirement. Id. at 619. They theorized that it would be possible in the future for three horse-racing tracks to exist within twenty-five miles of one another in Key West, “if someone were to obtain a thoroughbred horse racing permit there, if two others were to obtain quarter horse racing permits there, and if all three permit holders were located within twenty-five miles of each other.” Id. at 619. Although an expert cartographer conceded that this set of circumstances was possible, there was other evidence indicating that quarter horse racing was no longer profitable; that there had not been a quarter horse race in Florida in at least six years; and that, due to the land requirements for such racing, there was not enough land available in Key West for such a scenario to play out. Id. at 619-20. Accepting this evidence, the trial court deemed the law special. Id.
This Court affirmed the trial court’s ruling. From the trial court’s findings and the interplay between the buffer mandate *165 and the challenged law, this Court concluded that there was no reasonable possibility of the challenged law’s applying to any other area of the state in the future. Id. at 623. The Court characterized the Key West hypothetical scenario and other possibilities the Court considered as “highly contrived situations” demonstrating “no more than a technical possibility” that the statute could be applied to others in the future. Id. Such a possibility was insufficient to make the act at issue a general law. Id.
B. Defining the Relevant Class for the Purpose of Determining Whether the Law Is Special
Appellees assert that, to apply the foregoing principles concerning the open or closed nature of a class, we must consider subsections (a) and (b) of section 550.054(14) together. Appellees contend that these two subsections together form the relevant classification. We disagree.
The Act provides two distinct benefits. First, the Act allows certain jai-alai per-mitholders to convert their permits to greyhound permits. Second, it allows the holders of certain greyhound permits who are leasing facilities pursuant to section 550.475 to move their facilities and operate remote card rooms. While the Legislature undoubtedly intended for those who converted under subsection (a) to be able to take advantage of the benefit conferred in subsection (b), the two subsections still set out different classifications. The two subsections may work together as a practical matter, but nothing in the statutory language indicates that a jai-alai permitholder is prohibited from converting the permit under subsection (a) without taking advantage of the remainder of section 550.054(14). On the contrary, section 550.054(14)(b) provides that the holder of a permit converted under subsection (a) “may” relocate and operate a remote card room as long as it meets other conditions.
It is legally possible for a jai-alai permit-holder to take advantage of subsection (a) even though the restrictions in subsection (b) may prevent it from obtaining the full extent of the benefits available under section 550.054(14) as a whole. As Appellants correctly argue, the Biscayne court upheld a statute as general “[bjecause all of the classifications effected by this act [were] made on the basis of factors which [were] potentially applicable to others” and because the classifications were made on a rational basis. 165 So.2d at 763. This language indicates that each classification made within a statute must be considered independently. Because subsection (a) sets up a classification that is independent of the factors listed in subsection (b), the class it creates must be open for the law to pass constitutional muster.
A contrary holding would remove the effectiveness of article III, section 10. A closed class could always be paired with an independent open class as long as the two classes generally related to the same subject matter, thus creating an obvious loophole to article III, section 10. The effect of making a law applicable to a closed class without providing for advance notice or a referendum does not change simply because the class is recognized in the same statute as an open class.
C. The Meanings of “Only” and “Has Issued”
The language at issue within the classification set forth in section 550.054(14)(a) embodies the requirement that a permit seeking conversion be “located in a county in which the division has issued only two pari-mutuel permits pursuant to this section.” The parties have conflicting interpretations of both “only” and “has issued.” Our review of the statutory language is de novo, except to the *166 extent we must defer to the Division’s interpretation. See Brown v. State, Comm’n on Ethics, 969 So.2d 553, 557 (Fla. 1st DCA 2007). Courts must defer to an agency’s interpretation of a statute it administers unless the interpretation is clearly erroneous. Natelson v. Dep’t of Ins., 454 So.2d 31, 32 (Fla. 1st DCA 1984). Under this doctrine, deference is due to any agency interpretation within the range of possible interpretations of statutory language. Id. Deference is inappropriate, however, where the agency “has suddenly changed its interpretation of a statute with little or no explanation.” Commc’ns Workers of Am., AFL-CIO v. City of Gainesville, 65 So.3d 1070, 1076 (Fla. 1st DCA 2011). Further, the agency’s interpretation should be set aside where it is “in conflict with the state constitution or the plain intent of the statute.” Perkins v. Dep’t of Health & Rehabilitative Servs., Dist. IV, 452 So.2d 1007, 1008 (Fla. 1st DCA 1984).
The word “only” is not defined in the statute at issue. Therefore, it is appropriate to consult a dictionary to ascertain the range of possible interpretations. See 1000 Friends of Fla., Inc. v. Palm Beach County, 69 So.3d 1123, 1126 (Fla. 4th DCA 2011). “Only” means “[s]olely; merely; for no other purpose; at no other timé; in no otherwise; along; of or by itself; without anything more; exclusive; [or] nothing else or more.” Id. (quoting Black’s Law Dictionary 982 (5th ed. 1979)). Thus, “only” requires the exclusion of any alternatives other than the word it modifies. Applying this concept to the statute at issue, we conclude that “only two” means two and not one, three, or more.
Below, the Division’s representative, Barnes, interpreted the word “only” in precisely this way. On appeal, the Division has abandoned this interpretation, instead arguing that “only” means “no more than.” We hold that Barnes’ interpretation accurately reflects the plain language of the statute and, therefore, adopt it as the appropriate interpretation. Because the Division’s position on appeal is at odds with the plain language of the statute, it is not entitled to deference.
The meaning of “has issued” in the phrase “in which the division has issued only two permits” is also plain. It is in question because Appellees have posited that counties that presently have more than two permits in effect may later have only two permits in effect, if mergers or revocations occur. The literal meaning of the present perfect verb tense the Legislature used requires the Division to determine, at the present time, how many permits have previously been issued in a given county. The statute does not provide any indication that the Division is to exclude permits that are no longer in effect. Thus, the Division’s inquiry ends with the answer to the question of how many permits have historically been issued. We are not at liberty to read exceptions into the plain language of a statute. See Saleeby v. Rocky Elson Constr., Inc., 3 So.3d 1078, 1086 (Fla.2009). Rather, we are to give effect to the plain language of a statute unless the plain language is so absurd as to be clearly contrary to legislative intent. See State v. Hackley, 95 So.3d 92, 95-96 (Fla.2012).
Although we may question the purpose of focusing on the number of permits that have ever been issued, this requirement is not absurd or at odds with any expressed legislative intent. In fact, this interpretation comports with the remainder of section 550.054(14)(a), which uses the historical consideration of whether a permit has ever been converted as one criterion for permit conversion. This interpretation is also supported by the rule of statutory *167 construction that the use of different terms in different statutes on the same subject indicates that the Legislature intended distinct meanings. Guckenberger v. Seminole Cnty., 979 So.2d 407, 409 (Fla. 1st DCA 2008). In other statutes setting forth different classification schemes for pari-mu-tuel permits, the Legislature used the present-tense phrase “there are” to guide the Division’s inquiry concerning the relationship between a county or area and a number of permits. See, e.g., §§ 550.615(7), (9); 550.6805(9)(d), (f). Thus, when the Legislature intends to create a classification criterion with respect to the conditions that exist at a given time, as opposed to historical considerations, it knows how to do so.
D. Application of the Law to the Undisputed Facts
With the foregoing legal concepts in mind, we conclude that the law challenged in this case sets forth, on its face, very specific limiting criteria for conversion of jai-alai permits into greyhound permits. The law is so specific that the Legislature essentially described specific counties as the ones where jai-alai permits may be converted to greyhound permits. Cf. W. Flagler Kennel Club, Inc. v. Fla. State Racing Comm’n, 153 So.2d 5, 7 (Fla.1963) (observing that a statute’s classification was arbitrary because “the descriptive technique [was] employed merely for identification rather than classification”).
Barnes unequivocally testified that there are exactly two counties in Florida that currently qualify for conversion under section 550.054(14)(a). From our independent review of the factual information Barnes provided, it appears that one more county, Marion, may qualify in the future if its permit falls dormant for ten years and if its permit has not previously been converted. Assuming for the sake of decision that Marion County has a reasonable possibility of qualifying in the future, Appellants have nevertheless shown that the law is special, as the addition of one county to the two that presently qualify does not render the class open.[2] Because the identity of the single county to which the law may be applied in the future is readily ascertainable and not subject to change, the law is still “one relating to, or designed to operate upon, particular persons or things.” Harris, 163 So. at 240 (defining “special law”). Barnes’ uncontested testimony establishes conclusively that, under the current state of the law, section 550.054(14)(a) has the potential of applying to three specific counties in Florida and no others.
No counties other than Marion, Palm Beach, and Volusia had only two section 550.054 permits, including one jai-alai permit, either on the effective date of the Act or at the time of Barnes’ deposition. Three counties, St. Lucie, Hamilton, and Gadsden, had only one permit, which was the jai-alai permit. However, Gadsden was ineligible because its permit had already been converted, which violates the criterion specified in section 550.054(14)(a)2. St. Lucie and Hamilton Counties might qualify theoretically, but only if a new permit is issued in one of those two counties pursuant to section 550.054. Barnes’ testimony indicates that such an occurrence is legally impossible given the buffer requirement of section 550.054(2).
According to Barnes, only two counties in Florida have a location consistent with the mileage restriction of section 550.054(2), and there is no existing pari *168 mutuel permit in either of those counties. From this testimony, we conclude that these two locations are the only places where a new section 550.054 permit can legally be issued. These facts leave room for only one scenario in which a permit-holder might qualify for conversion under section 550.054(14)(a) in the future. One might open any pari-mutuel facility under a section 550.054 permit in one of the two locations Barnes identified, and a new jai-alai facility might open fifty or more miles from that location, but still in the same county, fall dormant, and then apply for conversion. This possibility is merely technical, if it exists at all, and constitutes a highly contrived scenario that is insufficient to justify a conclusion that the class established by section 550.054(14)(a) is open.
Appellees’ argument that counties with more than two permits at the present time might fall under the category of counties referenced in section 550.054(14) (a) 1 if a permit is revoked by the Division or acquired by another permitholder is misguided. Such a scenario would not change the number of permits that have been issued in any county. The same three counties would still be the only counties in this state with a presently existing jai-alai permit where the Department has issued only two section 550.054 permits. Barnes’ testimony indicates that the counties presently having only one permit will not be issued new permits due to the mileage restrictions of section 550.054(2). Therefore, the only additional permits that might ever comply with the criteria of section 550.054(14)(a) are those that do not yet exist. As we have concluded above, no reasonable possibility exists that those permits will come into existence and proceed to meet the remaining requirements of the class.
Because the undisputed material facts establish that there is no reasonable possibility that any permits other than those that have either already converted under section 550.054(14)(a) or the one that may convert if it falls dormant for ten years, we conclude that chapter 2009-170, section 6, is a special law. Furthermore, we can conceive of no rational basis for distinguishing between counties where two permits have been issued and counties where one or three permits have been issued, particularly in light of the fact that the statutory language does not allow the Division to consider only the presently existing permits. Accordingly, we reverse and remand for entry of summary judgment for Appellants on their request for a declaration that chapter 2009-170, section 6, is unconstitutional. It is undisputed, and we agree, that the remainder of chapter 2009-170 is severable and is unaffected by this decision. Because the trial court’s final order addressed other matters not challenged in this appeal, it is otherwise affirmed.
No additional motions for rehearing will be entertained. The Clerk is directed to issue the mandate forthwith.
AFFIRMED in part; REVERSED in part; and REMANDED.
BENTON, C.J., ROBERTS, J., and WRIGHT, WILLIAM L, Associate Judge, Concur.

. Appellants provided counter evidence. Because we conclude that Appellants' earlier motion should have been granted based on the application of subsection (a) alone, we express no opinion as to whether License Acquisitions’ evidence was sufficient to show the absence of a genuine issue of material fact as to the reach of subsection (b) or whether Appellants’ counter evidence was sufficient to overcome such a showing.

. None of the parties have acknowledged that section 550.054(14)(a)l may be applied to Marion County in the future. Nevertheless, the existence of this possibility is unmistakable from the facts provided in Barnes' affidavit.