# Supreme Court of Florida

_____

No. SC13-968
_____

**LICENSE ACQUISITIONS, LLC, et al.,**
Appellants,

vs.

**DEBARY REAL ESTATE HOLDINGS, LLC, et al.,**
Appellees.

_____

No. SC13-1028
_____

**FLORIDA DEPARTMENT OF BUSINESS & PROFESSIONAL
REGULATION, et al.,**
Appellants,

vs.

**DEBARY REAL ESTATE HOLDINGS, LLC, et al.,**
Appellees.

[November 26, 2014]

LABARGA, C.J.

This case is before the Court on appeal from a decision of the First District

Court of Appeal, Debary Real Estate Holdings, LLC v. State, Department of

Business & Professional Regulation, Division of Pari-Mutuel Wagering, 112 So. 3d 157 (Fla. 1st DCA 2013), which held section 550.054(14)(a), Florida Statutes (2010), to be an invalid special law. This Court has jurisdiction of the appeal under article V, section 3(b)(1) of the Florida Constitution. For the following reasons, we reverse the First District and hold that section 550.054(14)(a) is a valid general law.

## FACTS

Appellants, the Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering (DBPR), License Acquisitions, LLC, and West Volusia Racing, Inc., f/k/a Volusia Jai-Alai, Inc., appeal the First District's per curiam decision declaring section 550.054(14)(a) to be invalid as a special law enacted without either providing advance notice of intent to enact the law or conditioning the law's effectiveness upon a referendum of the electors of the areas affected in violation of article III, section 10, of the Florida Constitution. Based on this ruling, the district court concluded that the trial court should have granted the appellees' motion for summary judgment. Debary, 112 So. 3d at 160.

Effective July 1, 2010, section 550.054(14) provides as follows:

> (14)(a) Any holder of a permit to conduct jai alai may apply to the division [of pari-mutuel wagering] to convert such permit to a permit to conduct greyhound racing in lieu of jai alai if:
> 1. Such permit is located in a county in which the division has issued only two pari-mutuel permits pursuant to this section;

2. Such permit was not previously converted from any other class of permit; and

3. The holder of the permit has not conducted jai alai games during a period of 10 years immediately preceding his or her application for conversion under this subsection.

(b) The division, upon application from the holder of a jai alai permit meeting all conditions of this section, shall convert the permit and shall issue to the permitholder a permit to conduct greyhound racing. A permitholder of a permit converted under this section shall be required to apply for and conduct a full schedule of live racing each fiscal year to be eligible for any tax credit provided by this chapter. The holder of a permit converted pursuant to this subsection or any holder of a permit to conduct greyhound racing located in a county in which it is the only permit issued pursuant to this section who operates at a leased facility pursuant to s. 550.475 may move the location for which the permit has been issued to another location within a 30-mile radius of the location fixed in the permit issued in that county, provided the move does not cross the county boundary and such location is approved under the zoning regulations of the county or municipality in which the permit is located, and upon such relocation may use the permit for the conduct of pari-mutuel wagering and the operation of a cardroom. The provisions of s. 550.6305(9)(d) and (f) shall apply to any permit converted under this subsection and shall continue to apply to any permit which was previously included under and subject to such provisions before a conversion pursuant to this section occurred.

§ 550.054(14), Florida Statutes (2010).

West Volusia Racing, Inc. (West Volusia Racing), and License Acquisitions, LLC (License Acquisitions), applied for the conversion of their jai alai permits under section 550.054(14)(a) on the day section 550.054 became effective. Approximately three weeks later, the DBPR granted the applications. Shortly thereafter, Debary Real Estate Holdings, LLC (Debary), instituted a declaratory judgment action alleging in pertinent part that section 550.054(14) is an

- 3 -

unconstitutional special law—a law designed to operate upon particular persons or things, or one that purports to operate upon classified persons or things when classification is not permissible or the classification adopted is illegal—enacted without notice or conditioning the law's effectiveness upon a referendum. The appellants argued that the statute is a general law—a law that operates uniformly within a permissible classification and is not subject to the notice or referendum requirements of article III, section 10, of the Florida Constitution. Specifically, Debary alleged that section 550.054(14)(a)1. was only applicable to two jai alai permits and that the classification adopted was not rationally related to the purpose of the statute because the statute would never be capable of application to additional parties. Therefore, according to Debary, the classification adopted was illegal. Debary subsequently amended its complaint to add an additional plaintiff.

The appellees then filed a motion for summary judgment supporting their contention that the statute was a special law with the following facts. At the time of the statute's enactment, there were twenty-one total section 550.054 permits existing in nine counties in Florida, eleven of which were jai alai permits. West Volusia Racing and License Acquisitions held jai alai permits that were eligible for conversion at the time of the statute's enactment because the permits were dormant for ten years and were located in counties where the DBPR had issued exactly two section 550.054 permits, which include permits for greyhound racing, jai alai,

- 4 -

thoroughbred horse racing, and harness horse racing. According to the appellees, no other permits were eligible for conversion at the time of the statute's enactment and no other permits would ever be eligible for conversion. As a result, the appellees argued at the trial court level, to the First District, and here on appeal that two permits met all the criteria set forth in section 550.054(14)(a) at the time the statute was enacted, and that no reasonable possibility exists that any other permits will ever qualify for conversion absent a change in the law due to the restriction in subsection (14)(a)1. Thus, the appellees contended that the statute was invalid as a special law enacted under the guise of a general law. The trial court denied the appellees' motion for summary judgment.

The appellees then sought leave to amend their first amended complaint, which was granted.[1] Thereafter, License Acquisitions moved for summary judgment regarding the allegation that section 550.054(14)(a) was an

_____

1. In the second amended complaint, the appellees requested: (1) the issuance of a writ of quo warranto directed to the DBPR because it lacked authority under section 550.054(14)(a) to convert the pari-mutuel permits held by License Acquisitions and West Volusia Racing; (2) the issuance of a writ of quo warranto directed to West Volusia Racing to prevent it from exercising any rights or privileges under the greyhound permit; (3) the issuance of a writ of quo warranto directed to License Acquisitions to prevent it from exercising any rights under the greyhound permit; (4) the issuance of a declaration that License Acquisitions did not qualify for conversion and the order granting the conversion application is either void or voidable; (5) the issuance of a declaration that West Volusia Racing did not qualify for conversion and the order granting the conversion application is either void or voidable; and (6) the issuance of a declaration that section 550.054(14)(a) is an unconstitutional special law.

- 5 -

unconstitutional special law, arguing that the statute was a general law because sections 550.054(14)(a) and (b), when read together, created a classification rationally related to the purpose of the statute because the statute would be capable of application to additional parties. The trial court granted License Acquisitions' motion for summary judgment.

After the appellees filed another amended complaint, which no longer alleged unconstitutionality of the statute,[2] the court determined that it lacked subject matter jurisdiction, but noted that the appellees could seek relief under chapter 120, Florida Statutes. The appellees timely appealed the final judgment entered in favor of the appellants.

**First District's Decision**

On appeal, the First District held that the trial court erred in denying the appellees' motion for summary judgment and instructed the trial court to enter summary judgment in favor of the appellees.

The First District began its analysis by discussing the appropriate standards for determining whether a law is special or general. The court observed that a law is general when it operates on the basis of a classification system if the class affected or regulated is potentially applicable to people or entities in the future, and

---

2. The final amended complaint did allege that the statute was an unconstitutional special law, but only did so for preservation purposes.

- 6 -

there is a reasonable basis for the classification when the purpose of the legislation and the subject of the regulation are considered. Debary, 112 So. 3d at 163-64 (citing Biscayne Kennel Club, Inc. v. Florida State Racing Comm'n, 165 So. 2d 762, 763-64 (Fla. 1964)). Further, the court noted that whether the class is potentially open is the dispositive fact in determining whether a reasonable relationship exists between the classification in pari-mutuel legislation and the subject of the statute. Id. at 164 (citing Dep't of Bus. Regulation v. Classic Mile, 541 So. 2d 1155, 1158 n.4 (Fla. 1989)). Finally, the court stated that the standard for determining the openness of the class is whether there is a reasonable possibility that others will join the class in the future. Id.

Turning to the appellants' arguments, the First District rejected the argument that subsections (a) and (b) of section 550.054(14), read together, were the relevant classification for determining whether the law was a special or general law. Id. at 165. The First District noted that subsections (a) and (b) provided two distinct benefits and that it was legally possible for a jai alai permit holder to take advantage of subsection (a) while being restricted from obtaining the benefits of subsection (b). Further, the First District reasoned that a closed class could then always be paired with an open class to steer clear of constitutional challenges. This determination was not challenged here on appeal.

The First District then discussed the meanings of "only" and "has issued" as used in section 550.054(14)(a)1. The court considered the plain language of the statute, determining that the use of the word "only" required exclusion of any alternatives other than the word it modifies, which was "two" in this case. Id. at 166. Regarding "has issued," the court found that the literal meaning of the present perfect verb tense used by the Legislature requires the DBPR to determine, at the present time, how many permits have previously been issued in a given county. Id. Thus, the court determined that the DBPR's inquiry ended with the answer to the question of how many permits have historically been issued. Id. Applying the law to the facts, the First District found that the law was so specific that the Legislature essentially described specific counties as the ones where jai alai permits may be converted to greyhound permits. Accordingly, the court held that the statute was an unconstitutional special law because there was no reasonable possibility that any other permits would join the class. Id.

On appeal to this Court, the appellants contend that section 550.054(14)(a) is a valid general law, arguing that the First District declared the statute invalid because it misinterpreted the words "has issued" and "only" in section 550.054(14)(a)1. According to the appellants, "has issued" is not intended to mean that every permit ever issued is considered, but only those that have not been revoked or merged with another permit holder in the same county. Regarding

- 8 -

"only," the appellants contend that it means "no more than." According to these definitions, the statute is a valid general law because there is a reasonable possibility that it could apply to ten of the eleven jai alai permits in the state. Thus, the appellants contend that the First District erred by not adopting this construction. For the following reasons, we hold that the statute is a valid general law and reverse the First District's decision holding the statute to be unconstitutional.

## ANALYSIS

### Special Law v. General Law

"A law that operates universally throughout the state, uniformly upon subjects as they may exist throughout the state, or uniformly within a permissible classification is a general law." Classic Mile, Inc., 541 So. 2d at 1157 (citing State ex rel. Landis v. Harris, 163 So. 237 (Fla. 1934)). A special law is one designed to operate upon particular persons or things, or one that purports to operate upon classified persons or things when classification is not permissible or the classification adopted is illegal; a local law is one relating to, or designed to operate only in, a specifically indicated part of the State, or one that purports to operate within a classified territory when classification is not permissible or the classification is illegal. Id. Article III, section 10, of the Florida Constitution prohibits the Legislature from passing a special law without either providing

- 9 -

advance notice of intent to enact the law or conditioning the law's effectiveness upon a referendum of the electors of the areas affected. A special law, however, is not converted into a general law by the Legislature's treating it and passing it as a general law. Id. at 1157-58 (citing Anderson v. Bd. of Pub. Instruction, 136 So. 334, 337 (Fla. 1931)).

A statutory classification scheme must bear a reasonable relationship to the purpose of the statute in order for the statute to constitute a valid general law. Id. at 1157 (citing West Flagler Kennel Club, Inc. v. Fla. State Racing Comm'n, 153 So. 2d 5 (Fla. 1963)). Statutes that employ arbitrary classification schemes are not valid as general laws. Id. A statute is invalid if " 'the descriptive technique is employed merely for identification rather than classification.' " Id. at 1159 (quoting West Flagler, 153 So. 2d at 8). Ultimately, the criterion that determines if a reasonable relationship exists between the classification adopted and the purpose of the statute is whether the classification is potentially open to additional parties. Id. at 1158-59 (quoting Dep't of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So. 2d 879, 882 (Fla. 1983)); see also Ocala Breeders' Sales Co., Inc. v. Fla. Gaming Ctrs., Inc., 731 So. 2d 21, 25 (Fla. 1st DCA 1999) ("If it is possible in the future for others to meet the criteria set forth in the statute, then it is a general law and not a special law."). A classification scheme is not considered closed "merely because it is unlikely that it will include anyone else." Fla. Dep't of Bus.

& Prof'l Regulation v. Gulfstream Park Racing Ass'n, Inc., 967 So. 2d 802, 808-09 (Fla. 2007).  However, a classification scheme is not considered open "merely because there is a theoretical possibility that some day it might include someone else.  That approach would undermine the constitutional requirements for the adoption of special laws. . . .  [T]he proper standard is whether there is a reasonable possibility that the class will include others."  Id. at 809.

The parties do not dispute that the Legislature did not provide notice of its intent to enact the statute or condition its effectiveness on a referendum of the electors of the areas affected.  Thus, the issue on appeal to this Court is whether section 550.054(14)(a) is unconstitutional as a special law passed under the guise of a general law.  The question of whether a law is a special or general law is a legal question subject to de novo review.  Gulfstream Park Racing, 967 So. 2d at 806 (citing Schrader v. Fla. Keys Aqueduct Auth., 840 So. 2d 1050, 1055 (Fla. 2003)); see also Scott v. Williams, 107 So. 3d 379, 384 (Fla. 2013) (noting that the determination of whether a statute is constitutional is a pure question of law which is reviewed de novo).  "Although our review is de novo, statutes come clothed with a presumption of constitutionality and must be construed whenever possible to effect a constitutional outcome."  Lewis v. Leon Cnty., 73 So. 3d 151, 153 (Fla. 2011) (citing Fla. Dep't of Revenue v. City of Gainesville, 918 So. 2d 250, 256 (Fla. 2005)).  " 'To overcome the presumption, the invalidity must appear beyond

reasonable doubt, for it must be assumed the [L]egislature intended to enact a valid law.' " Id. (quoting Franklin v. State, 887 So. 2d 1063, 1073 (Fla. 2004)).

The parties herein are in agreement that the statute when enacted and at the time of the trial court proceedings only applied to License Acquisitions and West Volusia Racing. The basis of their divergence—rooted in their disagreement regarding the definitions of "has issued" and "only" as they appear in section 550.054(14)(a)1.—is whether there is a reasonable possibility that the class is open to additional parties. Section 550.054 provides:

> (14)(a) Any holder of a permit to conduct jai alai may apply to the division to convert such permit to a permit to conduct greyhound racing in lieu of jai alai if:
> 1. Such permit is located in a county in which the division has issued only two pari-mutuel permits pursuant to this section;

§ 550.054 (14)(a)1., Fla. Stat. (2010). According to the appellants, if "only" is construed to mean "not more than," and "has issued" is not interpreted to mean "has ever issued," then the class is open to others pursuant to a future change in factual circumstances. The appellees, on the other hand, contend that the First District correctly determined that the classification scheme is closed because "only" means "precisely," and "has issued" refers to the number of permits the DBPR has historically issued. Thus, according to the appellees, section 550.054(14)(a) creates a classification scheme that is closed and will only ever apply to License Acquisitions and West Volusia Racing. Accordingly, whether

- 12 -

section 550.054(14)(a) is a valid general law or an invalid special law is dependent on the meaning of "only" and "has issued."

**Interpretations of "Only" and "Has Issued"**

Here, the appellees argue that the statute's plain language simply merits literal effect, whereas the appellants argue that the plain language is open to alternative interpretations, which requires the Court's application of principles of statutory construction. Legislative intent controls construction of statutes in Florida. Florida Dept. of Bus. & Prof'l Regulation, Div. of Pari-Mutuel Wagering v. Inv. Corp. of Palm Beach, 747 So. 2d 374, 382 (Fla. 1999). To determine legislative intent, the courts look primarily to the language of the statute and its plain meaning. Id. (citing St. Petersburg Bank & Trust Co. v. Hamm, 414 So. 2d 1071, 1073 (Fla. 1982)); see also Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984); Sanford-Orlando Kennel Club, 434 So. 2d at 882; Carson v. Miller, 370 So. 2d 10, 11 (Fla. 1979). " '[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.' " Inv. Corp. of Palm Beach, 747 So. 2d at 382 (quoting Holly, 450 So. 2d at 219). However, this Court will not give a statute a literal interpretation if such an interpretation would result in "an unreasonable or ridiculous conclusion." Id. at 383 (quoting Perkins v. State, 682 So. 2d 1083, 1085

- 13 -

(Fla. 1996)).  The Legislature did not define "only" and "has issued" in chapter

550.  Thus, it is appropriate to refer to dictionary definitions in order to ascertain

the plain meaning of the statutory provisions at issue.  Greenfield v. Daniels, 51

So. 3d 421, 426 (Fla. 2010) (quoting Sch. Bd. of Palm Beach Cnty. v. Survivors

Charter Sch., Inc., 3 So. 3d 1220, 1233 (Fla. 2009)).

The word "has" is defined in Merriam-Webster's Collegiate Dictionary 571

(11th ed. 2005) as the third-person singular of have, which is defined as "to stand in

a certain relationship to."  "Issued" is defined as "to put forth or distribute."  Id. at

665.  As the First District noted, the plain and literal meaning of the present perfect

verb tense the Legislature used here refers to the number of permits that have been

issued in a given county at the time the DBPR considers a permit holder's

application to convert.  Debary, 112 So. 3d at 166.  Nothing from this language

suggests that any other fact beyond whether a permit has been issued is considered

in determining whether an applicant for permit conversion has met the statutory

requirements.

The appellants note, however, that such an interpretation of "has issued"

would result in the DBPR considering all permits that have ever been issued even

if an issued permit has been revoked, abandoned, or consolidated with another

permit.  Specifically, appellants argue that the total number of permits issued in a

given county could be reduced in the future by reduction of permits in those

- 14 -

counties by either revocation pursuant to sections 550.0251(10), 550.054(9)(b), 550.175, and 550.1815, Florida Statutes, or by merger (holder of one permit within the same county acquires another permit and consolidates or abandons). Thus, according to the appellants, such a construction is not in accord with legislative intent.

Although legislative intent must be determined primarily from the language of the statute, see Rollins v. Pizzarelli, 761 So. 2d 294, 297 (Fla. 2000), this Court will not give a statute a literal interpretation if such an interpretation would result in an unreasonable conclusion. Inv. Corp. of Palm Beach, 747 So. 2d at 383. This Court has noted in the past that "Florida has a legitimate pecuniary interest in racing because of the substantial revenue it receives from pari-mutuel betting. . . ." Sanford-Orlando Kennel Club, 434 So. 2d at 881-82. Further, this Court has previously observed that "it is the public policy of this state to limit the distance within which additional establishments of like character may be licensed for operation" to avoid over-competition. See Rodriguez v. Jones, 64 So. 2d 278, 279 (Fla. 1953). A permit previously issued by the DBPR that no longer exists either because it has been revoked, abandoned, or merged with another permit in the same geographic area does not create additional revenue for the state and does not result in over-competition. Thus, in the context of the pari-mutuel wagering industry, interpreting "has issued" to require the DBPR to consider permits that no

longer exist, and no longer generate tax revenue for the state, would be an unreasonable conclusion. We now turn to the possible interpretations of "only."

The appellees argue that "only," when used as an adjective, is defined as "alone in a class or category," and "as a single fact or instance and nothing more or different" in Merriam-Webster's Collegiate Dictionary. As noted by the First District, Black's Law Dictionary in 1979 defined "only" to mean "[s]olely; merely; for no other purpose; at no other time; in no otherwise; alone; of or by itself; without anything more; exclusive; [or] nothing else or more." Black's Law Dictionary 982 (5th ed. 1979). Thus, according to the authorities listed above, the definition of "only" indicates that the statutory condition in section 550.054 of "only two permits" means "precisely two permits."

An alternate definition of "only," however, demonstrates that the Legislature's use of "only" is ambiguous and, therefore, subject to statutory construction. Although "only" can be defined to mean solely or merely, other dictionaries and thesauruses equate "only" to "nothing more than" or some approximate variation when "only" is used as an adverb. See American Heritage Roget's Thesaurus 554 (2013) ("nothing more than"); Oxford American Dictionary & Thesaurus (2d ed. 2009) ("no more than"); and The Merriam-Webster Thesaurus (2005) ("nothing more than"). Further, the definition of "only" quoted in the First District's opinion contains "without anything more," which can mean "no more

- 16 -

than." Indeed, references to certain uses of "only" in other statutory provisions suggest that the word has been used by the Legislature to indicate a maximum amount.

For instance, section 310.071(3), Florida Statutes (2010), provides that a deputy pilot's certificate, valid for two years, may be renewed "only two times. . . ." This language suggests that a deputy pilot may renew a license less than two times, but cannot exceed the limit of two renewals. Section 458.347(7)(b)3., Florida Statutes (2010), which applies to physician assistant licensure, provides that the examination any person desiring to be licensed as a physician assistant must take "shall be administered by the department only five times." Once again, the Legislature's use of the word "only" appears to be intended to operate as a maximum rather than require an applicant to take the same examination five times. Section 561.422, Florida Statutes (2010), provides that a permit may be issued authorizing a bona fide nonprofit civic organization to sell alcoholic beverages for consumption on the premises and that an organization may be issued "only three such permits per calendar year." The Legislature's use of "only" here also suggests that the number three is a maximum rather than a requirement that civic organizations use three permits every year. Section 597.010(18)(b)4., Florida Statutes (2010), provides that approval to harvest shellfish by dredge from privately held shellfish leases or grants in Apalachicola

Bay shall include, among many other conditions, the condition that "[o]nly two dredges or scrapes per lease or grant may be possessed or operated at any time." This provision also suggests that "only" refers to a maximum rather than a requirement that two dredges be used at a time. Finally, section 641.65(3)(b), Florida Statutes (2010), provides that members of a district managed-care ombudsman committee "may serve only two consecutive terms," which creates a maximum amount of terms.

As demonstrated above, "only" as used in section 550.054(14)(a)1. is capable of more than one construction. Thus, a level of ambiguity exists in the statute. See Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992) ("Ambiguity suggests that reasonable persons can find different meanings in the same language."). As a result, the statute's meaning is subject to judicial construction. Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay Downs, Inc., 948 So. 2d 599, 606 (Fla. 2006) (citing Blanton v. City of Pinellas Park, 887 So. 2d 1224, 1230 (Fla. 2004)).

The Court is obligated to accord legislative acts a presumption of constitutionality and to construe challenged legislation to effect a constitutional outcome whenever reasonably possible. See, e.g., Scott, 107 So. 3d at 384; State v. Adkins, 96 So. 3d 412, 416-17 (Fla. 2012); Crist v. Fla. Ass'n of Criminal Def. Lawyers, Inc., 978 So. 2d 134, 139 (Fla. 2008); Bush v. Holmes, 919 So. 2d 392,

- 18 -

405 (Fla. 2006); Fla. Dep't of Revenue v. Howard, 916 So. 2d 640, 642 (Fla. 2005). "[E]ven where the statute is reasonably susceptible of two interpretations, one of which would render it invalid and the other valid, we must adopt the constitutional construction." State v. Lick, 390 So. 2d 52, 53 (Fla. 1980); see also Dep't of Ins. v. Se. Volusia Hosp. Dist., 438 So. 2d 815, 820 (Fla. 1983); Miami Dolphins, Ltd. v. Metro. Dade Cnty., 394 So. 2d 981, 988 (Fla. 1981) ("Given that an interpretation upholding the constitutionality of the act is available to this Court, it must adopt that construction."); Corn v. State, 332 So. 2d 4, 8 (Fla. 1976) (holding that the Court has a duty "to adopt a reasonable interpretation of a statute which removes it farthest from constitutional infirmity"); Overstreet v. Blum, 227 So. 2d 197, 199 (Fla. 1969) (citing Redwing Carriers, Inc. v. Mason, 177 So. 2d 465, 467 (Fla. 1965)). Thus, where terms in a statute are ambiguous and the statute "may reasonably be construed in more than one manner, this Court is obligated to adopt the construction that comports with the dictates of the Constitution." Vildibill v. Johnson, 492 So. 2d 1047, 1050 (Fla. 1986). In that circumstance, we will adopt the construction that will effect a constitutional outcome so long as it is a fair construction of the statute consistent with legislative intent. See State v. Globe Commc'ns Corp., 648 So. 2d 110, 113 (Fla. 1994).

As discussed below, the First District's interpretation renders the statute an unconstitutional special law whereas the appellants' proposed interpretation renders the statute a valid general law.

**First District's Interpretations Render the Statute Unconstitutional**

Pursuant to the First District's interpretations of "has issued" and "only," and review of the record, only two counties had permit holders with the ability to convert to a greyhound permit at the time of the statute's enactment. Indeed, License Acquisitions and West Volusia Racing, located in Palm Beach County and Volusia County, respectively, were the only two jai alai permit holders, out of eleven in the state, to apply for conversion of their permits to permits for greyhound racing. Further, evidence in the record establishes that no other counties have a jai alai permit holder who can convert the permit under the statute. For instance, Gadsden County is ineligible due to a previous conversion that disqualifies the permit holder. See § 550.054(14)(a)2. ("Such permit was not previously converted from any other class of permit. . . ."). St. Lucie County, Hamilton County, and two counties that currently do not have a single pari-mutuel wagering permit under section 550.054 are also ineligible due to the mileage buffer requirement of section 550.054(2), which makes it legally impossible to add a second section 550.054 pari-mutuel permit. See § 550.054(2) ("In addition, an application may not be considered, nor may a permit be issued by the division or

be voted upon in any county, to conduct horse races, harness horse races, or dog races at a location within 100 miles of an existing pari-mutuel facility, or for jai alai within 50 miles of an existing pari-mutuel facility. . . ."); § 550.054(14)(a)1. ("Such permit is located in a county in which the division has issued only two pari-mutuel permits pursuant to this section."). Thus, pursuant to the First District's interpretations, the class is closed absent a change in the law. Accordingly, based upon the First District's interpretation of "has issued" and "only," the classification adopted does not bear a reasonable relationship with the purpose of the statute,[3] and the statute is an invalid special law. Under the available alternative interpretations, however, the statute is rendered a valid general law.

**Alternative Interpretations Render the Statute a Valid General Law**

The appellants claim that adoption of their suggested interpretations would result in a class open for conversion to all of the remaining permits except one—thus a total of ten of the eleven existing permits at the time of the statute's enactment—without a change in the law. Indeed, review of the record demonstrates that Hillsborough County had three total section 550.054 permits, one of which was a dormant jai alai permit; Gadsden County had a dormant jai alai

---

3. It is difficult to formulate a reasonable rationale to limit conversion of permits to permit holders in counties that have exactly two section 550.054 permits, and prevent permit conversion to permit holders from counties that have zero additional competing section 550.054 permits.

permit, but it previously converted and could never be eligible; Miami-Dade County and Broward County both had two active jai alai permits, and five total section 550.054 permits; St. Lucie County had one active jai alai permit and no other section 550.054 permits; Hamilton County had one active jai alai permit and no other section 550.054 permits; Marion County had one active jai alai permit and no other section 550.054 permits[4]; and two other counties, possibly Bay County and Dixie County, did not presently have any 550.054 permits and could legally acquire a permit without violating the mileage restrictions in section 550.054(2) noted above. Thus, only one current jai alai permit holder would be ineligible, and two counties without a present jai alai permit holder could conceivably join the class. Accordingly, the class is open to additional parties pursuant to this construction of the statute, which renders the statute a valid general law. See Classic Mile, 541 So. 2d at 1157 ("A statutory classification scheme must bear a reasonable relationship to the purpose of the statute in order for the statute to constitute a valid general law."); Sanford-Orlando Kennel Club, 434 So. 2d at 882 (reasoning that the controlling point in evaluating the statute's constitutionality was the openness of the class).

---

4. The record shows that Marion County has one jai alai permit and a "limited intertrack wagering license." As the appellees correctly note and the appellants do not dispute, the record does not specify that this license is not a section 550.054 permit, but it is, in fact, a license granted pursuant to section 550.6308. Thus, Marion County only has one section 550.054 permit.

Indeed, application of every enumerated condition for conversion set forth in section 550.054(14)(a) demonstrates that the conditions are reasonably related to the purpose of the statute. Section 550.054 is titled "Application for permit to conduct pari-mutuel wagering." Pari-mutuel wagering is a heavily regulated industry in Florida. See Sanford-Orlando Kennel Club, 434 So. 2d at 881 ("Florida has a legitimate pecuniary interest in racing because of the substantial revenue it receives from pari-mutuel betting. . . . [And] because of the nature of the enterprise, authorized gambling, this state may exercise greater control and use the police power in a more arbitrary manner."). This Court has also stated that "[i]n the regulation of such establishments or 'enterprises,' it is the public policy of this state to limit the distance within which additional establishments of like character may be licensed for operation." Rodriguez, 64 So. 2d at 279. Thus, given this context—the Legislature has a pecuniary interest in pari-mutuel wagering and historically limits the distance between establishments—the purpose of the statute is to guide the DBPR's discretion in considering applications for permits with the aim of maximizing revenue generation and limiting competition within certain geographical areas.[5]

---

5. Review of other provisions in this section demonstrates the Legislature's interest in generating revenue and limiting geographic competition. For example, section 550.054(2) establishes a mileage buffer, section 550.054(3)(h) requires applicants to provide a business plan for the first year of operation, section 550.054(10) allows the DBPR to revoke a permit if construction of the facilities is

As noted previously, section 550.054(14)(a) provides:

> (14)(a) Any holder of a permit to conduct jai alai may apply to the division to convert such permit to a permit to conduct greyhound racing in lieu of jai alai if:
> 1. Such permit is located in a county in which the division has issued only two pari-mutuel permits pursuant to this section;
> 2. Such permit was not previously converted from any other class of permit; and
> 3. The holder of the permit has not conducted jai alai games during a period of 10 years immediately preceding his or her application for conversion under this subsection.

The restriction regarding the number of permits in a county is consistent with the Legislature's policy of limiting the number of similar permits, section 550.054 permits in this case, within a given area. The Legislature has likely determined that fewer competing pari-mutuel wagering operations within a geographic area would avoid jeopardizing a pari-mutuel wagering operation's economic well-being. The restriction prohibiting previously converted permits from converting to greyhound racing could discourage permit holders seeking short-term success from constantly converting their permits; the Legislature could have reasonably determined that a more consistent business model would generate more revenues than a constantly evolving one. For instance, greyhound racing, thoroughbred

lagging, section 550.054(13)(a) restricts transfer of a thoroughbred racing permit or license if the transfer is intended to permit a licensee to change the horse racetrack's location subject to enumerated exceptions, and section 550.054(14)(b) allows a holder of a converted jai alai permit, subject to further conditions, to move the location within a thirty-mile radius, which enables the permit holder to conduct pari-mutuel wagering and operate a cardroom.

horse racing, and jai alai gaming would require different facilities, which could require temporary closure of facilities amid applications for construction permits or zoning permit conversions, investment in different operations, and training expenses for employees. Further, the ten-year dormancy period could serve to discourage or prevent successful jai alai frontons from shutting down operations to convert to a permit that may be marginally more lucrative. Finally, it could operate to prevent the complete eradication of all jai alai establishments, which also prevents over-competition in greyhound racing and cardroom operations.

This Court has held that the law must be upheld unless the Legislature could not have any reasonable ground for believing that there were public considerations justifying the particular classification and distinction made. North Ridge Gen. Hosp., Inc. v. City of Oakland Park, 374 So. 2d 461, 465 (Fla. 1979). Further, this Court has held that "one who assails the classification has the burden of showing that it is arbitrary and unreasonable." Id. at 465. The appellees have not met this burden. Thus, we hold that these interpretations render the statute a valid general law.

This case, when considered in light of our precedent, supports our conclusion that this statute is a valid general law pursuant to this construction of the statute. In Sanford-Orlando Kennel Club, this Court considered whether a statute that permitted the conversion of any harness racing track to dog racing was

an unconstitutional special law. 434 So. 2d at 880-81. Pursuant to the statute, a harness racing track could be converted to a dog racing track if that track earned a certain amount of average daily income over a period of years and generated a certain amount of tax revenue for the state. Id. at 880. Although the statute's classification scheme only applied to the two then-existing permits, the Court held that the classification scheme was a general law. The Court noted that "[a] general law operates uniformly, not because it operates upon every person in the state, but because every person brought under the law is affected by it in a uniform fashion. Uniformity of treatment within the class is not dependent upon the number of persons in the class." Id. at 881. Further, the Court reasoned that the controlling point in evaluating the statute's constitutionality was that "even though this class did in fact apply to only one track, it is open and has the potential of applying to other tracks." Id. at 882.

In Biscayne Kennel Club, Inc. v. Fla. State Racing Comm'n, 165 So. 2d 762 (Fla. 1964), this Court considered the constitutionality of a statute that provided "for the transfer, under certain conditions, of existing racing permits to allow establishment of harness racing operations in counties which have by previous referendum for two years approved the operation of race track pari-mutuel pools, excluding those having more than one horse track permit or one with an average daily pari-mutuel pool less than a specified minimum." Id. at 763-64. The Court

upheld the classification because a number of Florida counties could, by future referendum, acquire racing establishments and have "not more than one horse track with a daily pool above the minimum set." Id. at 764.

Other cases from this Court holding a statute unconstitutional largely involved classification schemes that were clearly applicable to only one individual, entity, or geographic area. See, e.g., Gulfstream Park, 967 So. 2d at 809 (addressing a statute that prohibited thoroughbred permit holders from engaging in intertrack wagering in "any area of the state where there are three or more horserace permitholders within 25 miles of each other," and holding that it was unconstitutional because there was no reasonable possibility that these conditions would ever exist in another part of the state); City of Miami v. McGrath, 824 So. 2d 143, 146, 151 (Fla. 2002) (addressing a statute which authorized only municipalities with populations of more than 300,000 on a date certain to impose a parking tax, and holding that the statute was a special law because its express terms limited its application and excluded any other municipalities from joining the class in the future); Classic Mile, 541 So. 2d at 1158-59 (declaring statute unconstitutional because conditions only applied to Marion County, could never apply to others, and the appellants made no attempt to demonstrate a reasonable relationship between the classification and the subject of the statute); W. Flagler Kennel Club, 153 So. 2d at 8 (holding the statute applicable only to Broward

County and noting that the appellants failed to attempt to demonstrate a reasonable relationship between the classification and the subject of the statute). It is also noted that in <u>Gulfstream Park</u>, this Court held that "a statute that appears to apply to one . . . area at the time of enactment may still be considered a general law if it could be applied to other . . . areas in the future." 967 So. 2d at 808. As discussed above, although section 550.054(14)(a) applied to two permits at the time of enactment, it could be applied to other permits in the future.

Finally, we also find that the alternative interpretations of "has issued" and "only" represent a fair construction of the statute consistent with legislative intent. As we noted previously, the Legislature has a pecuniary interest in this industry because of the substantial revenue it generates and has historically avoided over-competition of pari-mutuel wagering activities within a given geographic area. When "only" is used as an adjective in this context, it does not serve a discernible purpose—no articulated legislative policy would be served by requiring exactly two section 550.054 permits as a condition of conversion. When "only" is used as an adverb, however, it serves the grammatical purpose of indicating that the two-permit condition is a maximum of two permits, which advances the legislative policy of avoiding over-competition and maximizing revenues. Regarding "has issued," we also noted above that the First District's interpretation would lead to the unreasonable conclusion that the DBPR must consider permits that no longer

exist and no longer generate revenue or provide competition in a given area. Accordingly, we agree with the appellants' interpretation of the statute because it is a fair construction of the statute that is consistent with legislative intent and results in a determination that the statute is a valid general law.

## CONCLUSION

Based on the foregoing, we reverse the First District's decision holding section 550.054(14)(a) unconstitutional and direct the trial court to enter summary judgment in favor of the appellees because we hold that section 550.054(14)(a) is a valid general law in which the classification scheme reasonably relates to the purpose of the statute.

It is so ordered.

PARIENTE, CANADY, POLSTON, and PERRY, JJ., concur.
LEWIS, J., dissents.
QUINCE, J., recused.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the District Court of Appeal – Statutory or Constitutional Invalidity

First District - Case No. 1D12-1654

(Leon County)

Barry Scott Richard of Greenberg Traurig, P.A., Tallahassee, Florida, on behalf of License Acquisitions, LLC; J. Riley Davis and Thomas A. Range of Akerman LLP, Tallahassee, Florida, on behalf of West Volusia Racing, Inc.; J. Layne Smith and Garnett Wayne Chisenhall, Jr., Tallahassee, Florida, on behalf of Department of Business and Professional Regulation,

    for Appellants

David S. Romanik of David S. Romanik, P.A., Oxford, Florida,

    for Appellees